1  Daniel T. Rockey (California Bar No. 178604)
daniel.rockey@bryancave.com
2  Goli Mahdavi (California Bar No. 245705)
goli.mahdavi@bryancave.com
3  **BRYAN CAVE LLP**
560 Mission Street, 25th Floor
4  San Francisco, CA  94105-2994
Telephone:    (415) 675-3400
5  Facsimile:    (415) 675-3434

6  Attorneys for Plaintiff
SEPHORA USA, Inc.

7

8               IN THE UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11

12  SEPHORA USA, Inc.,                    Case No.: 3:15-cv-05750-JCS

13              Plaintiff,                **PLAINTIFF SEPHORA USA, INC.'S
                                          OPPOSITION TO DEFENDANT
14       v.                               PALMER, REIFLER AND
                                          ASSOCIATES' MOTION FOR
15  PALMER, REIFLER & ASSOCIATES, a       JUDGMENT ON THE PLEADINGS**
    Florida Corporation,
16                                        **Date: May 13, 2016**
                Defendant.                **Time: 9:30 a.m.**
17                                        **Location: Courtroom G - 15th Floor**

18                                        **450 Golden Gate Avenue**
                                          **San Francisco, CA 94102**
19

20                                        **Judge: Chief Magistrate Judge**
                                          **Joseph C. Spero**

21

22

23

24

25

26

27

28

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

# Table of Contents

Page

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................... 3

        A.      The *Renn* Lawsuit ................................................................................. 4

        B.      Sephora's Demand to PRA and its Defense of the Lawsuit ..................... 5

        C.      Other Lawsuits Based On PRA's Sending of Allegedly Deceptive
                Demand Letters ..................................................................................... 6

III.    LEGAL ANALYSIS ............................................................................................ 6

        A.      Legal Standard ....................................................................................... 6

        B.      PRA's Argument That It Is Relieved of Its Duty to Defend Because
                Sephora Sought to Control Its Defense Is Directly Inconsistent with
                Applicable Law and Cannot Be Resolved on the Pleadings in Any Event ..... 7

                1.      PRA's Duty to Defend Was Triggered by the Filing of the *Renn*
                        Complaint, Not By Sephora's Demand .................................. 7

                2.      PRAs' argument must also be rejected because it ignores
                        Sephora's right to be indemnified for its costs of defense ................ 10

        C.      PRA's Argument That It's Duty to Defend Arises Only If It Is First
                Determined That "Actual Negligence or Improper Conduct . . .  Exists"
                Is Illogical, Is Contrary to Law, and Would Render the Duty to Defend
                Illusory ................................................................................................. 12

                1.      The argument that no duty to defend arises from a mere
                        "allegation" is directly contrary to long-established law ................. 12

                2.      PRA's Argument that a Duty to Defend Arises Only Where
                        Actual Negligence Is Found to Exist Also Puts the Cart Before the
                        Horse ................................................................................. 14

                3.      PRA's Reliance on *Rountree* Is Misplaced ....................................... 15

        D.      PRA's Argument that the *Renn* Complaint Alleged Wrongdoing By
                Sephora and Not PRA is Simply Not Accurate ........................................... 19

                1.      Renn Alleges That PRA Runs A "Demand Letter Mill" ................... 19

                2.      The Renn Demand Letters ................................................................. 20

        E.      In the Event the Court Were At All Inclined to Grant PRA's Motion,
                Sephora Should be Permitted Leave to Amend ........................................... 23

IV.     CONCLUSION ................................................................................................. 24

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA  94105-2994

1

**Table of Authorities**

2

**Page**

3

**Cases**

4
*Amersbach v. City of Cleveland*,
   598 F.2d 1033 (6th Cir. 1979).................................................................................. 7

5
*Arabia v. Siedlecki*,
   789 So. 2d 380 (Fla. Dist. Ct. App. 2001)............................................................... 15

6
*Auto Owners Ins. Co. v. Travelers Cas. & Sur. Co.*,
   227 F. Supp. 2d 1248 (M.D. Fla.2002) ............................................................. 8, 12

7
*Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*,
   470 So. 2d 810 (Fla. Dist. Ct. App. 1985).............................................................. 13

8
*Basdeo*,
   742 F. Supp. 2d at 1326.............................................................................. 9, 14, 17

9
*Bonner v. City of Prichard, Ala.*,
   661 F. 2d 1206 (11th Cir. 1981)............................................................................. 17

10
*Brown v. Financial Indemnity Co.*,
   366 So. 2d 1273 (Fla.App. 1979)............................................................................ 11

11
*Clarendon America Ins. Co. v. All Brothers Painting, Inc.*,
   2013 WL 5921538 (M.D. Fla., Nov. 4, 2013)........................................................... 9

12
*Colony Ins. Co. v. Barnes*,
   410 F. Supp. 2d 1137 (N.D. Fla. 2005), *aff'd*, (11th Cir. 2006)............................... 8

13
*Continental Motors, Inc. v. Jewell Aircraft, Inc.*
   2013 WL 5498264, (S.D. Ala., Oct. 2, 2013) ......................................................... 18

14
*DeSoto v. Yellow Freight Sys., Inc.*,
   957 F.2d 655 (9th Cir. 1992)..................................................................................... 7

15
*Dworkin v. Hustler Magazine, Inc.*,
   867 F.2d 1188 (9th Cir.1989).................................................................................. 23

16
*Edwards v. City of Goldsboro*,
   178 F.3d 231 (4th Cir. 1999).................................................................................. 23

17
*Fleming v. Pickard*,
   581 F.3d 922 (9th Cir. 2009)..................................................................................... 7

18
*Florida Department of Transportation v. Southern Bell Telephone & Telegraph Co.*,
   635 So. 2d 74 (Fla. Dist. Ct. App. 1994)............................................................. 8, 11

19
*Florida Ins. Guaranty Ass'n, Inc. v. All The Way With Bill Vernay, Inc.*,
   864 So.2d 1126 (Fla. Dist. Ct. App. 2003).............................................................. 11

20
*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
   896 F.2d 1542 (9th Cir.1989).................................................................................... 6

21
*Ideal Steel Supply Corp. v. Anza*
   (2d Cir. 2011) 652 F.3d 310.................................................................................... 23

22
*J.A. Jones Construction Co. v. Zack Co.*,
   232 So. 2d 447 (Fla. Dist. Ct. App. 1970).......................................................... 8, 13

23
*James River Ins. Co. v. Ground Down Eng'g, Inc.*,
   540 F.3d 1270, 1275 (11th Cir. 2008)..................................................................... 12

24
*Jones v. Florida Ins. Guar. Ass'n, Inc.*,
   908 So. 2d 435 (Fla. 2005)............................................................................ 8, 9, 13, 17

25
*Kelly v. Palmer, Reifler & Associates, P.A.*,
   Case No. 1:08-cv-21843 (S.D. Fl. 2008)................................................................... 6

26
*Kohne*,
   181 F. App'x at 891 ................................................................................................ 10

27
*Lee v. The Pep Boys, Palmer Reifler, et al.*,
   No. 3:12-cv-05064-JSC (N.D. Cal.).............................................................. 1, 6, 10, 19

28

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

SEPHORA'S OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

*McGlinchy v. Shell Chemical Co.*
    845 F. 2d 802 (9th Cir. 1988) ............................................................................. 23

*Metropolitan Dade County v. CBM Industries of Minnesota, Inc.*
    776 So.2d 937 (Fla. Dist. Ct. App. 2000) .......................................................... 12

*Mid-Continent Cas. Co. v. Basdeo*
    (S.D. Fla. 2010) 742 F. Supp.2d 1293 *aff'd*, (11th Cir. 2012) 477 Fed. Appx. 702 ......... 8

*Mitchell v. Palmer, Reifler & Associates, P.A.,*
    Case No. 1:14-cv-00588 (E.D. NY 2014) ............................................................. 6

*Moran v. Peralta Cmty. Coll. Dist.,*
    825 F.Supp. 891 (N.D. Cal. 1993) ..................................................................... 7

*Mutual Employees Trademart, Inc. v. Armour Service of Florida, Inc.,*
    170 So.2d 64 (Fla. App. 1964) ......................................................................... 11

*National Railroad Passenger Corp, Inc. v. Rountree Transport and Rigging Co.,*
    286 F.3d 1233 (11th Cir. 2002) ............................................................ 15, 16, 17, 18

*Nussbaum v. Mortgage Service America Co.,*
    913 F. Supp. 1548 (S.D. Fla. 1995) ................................................................... 17

*Owen v. United States,*
    713 F.2d 1461 (9th Cir. 1983) ......................................................................... 17

*Pepper's Steel & Alloys, Inc. v. U.S. Fidelity and Guar. Co.,*
    668 F.Supp. 1541 (S.D. Fla. 1987) ............................................................... 13, 18

*Phila. Indem. Ins. Co. v. Kohne,*
    181 F. App'x 888 (11th Cir. 2006) ..................................................................... 9

*Ramos v. N.W. Mut. Ins. Co.,*
    336 So. 2d 71 (Fla. 1976) ............................................................................... 9

*Royal Oak Enterprises, Inc.*
    344 F.Supp.2d at 1365 ................................................................................... 18

*Sanislo v. Give Kids the World, Inc.,*
    157 So. 3d 256 (Fla. 2015) ............................................................................. 22

*Savage v. Council On American-Islamic Relations, Inc.,*
    2008 WL 2951281 (N.D. Cal. 2008) ................................................................... 6

*Scottsdale Ins. Co. v. Shageer*
    (S.D. Fla., Dec. 1, 2010, No. 10-80418-CIV) 2010 WL 4961166 ............................ 8

*Shannon v. Kaiser Aluminum and Chemical Corp.,*
    749 F. 2d 689 (11th Cir. 1985) ....................................................................... 11

*Sweeney et al. v. Federated Retail Holdings, Inc., et al.,*
    Case No. 2:06-cv-10887 (E.D. Mich. 2006) ......................................................... 6

*Tamera Renn v. Sephora USA, Inc.* ......................................................... passim

*Thomas v. W. World Ins. Co.,*
    343 So.2d 1298, (Fla. 2d DCA 1977) ............................................................... 11

*Travelers Indem. Co. of Illinois v. Royal Oak Enterprises, Inc.*
    (M.D. Fla. 2004) 344 F.Supp.2d 1358 *aff'd sub nom. Travelers Indemnity Co. of Ill. v. Royal Oak Enterprises, Inc.* 171 Fed. Appx. 831 (11th Cir. 2006) ................................ 14

*Trizec Props., Inc. v. Biltmore Construction Co.,*
    767 F.2d 810 (11th Cir.1985) ........................................................................... 8

*Vargas v. Schweitzer-Ramras,*
    878 So. 2d 415 (Fla. Dist. Ct. App. 2004) ......................................................... 15

*Yacht Club on the Intracoastal Condominium Ass'n, Inc. v. Lexington Ins. Co.,*
    944 F. Supp. 2d 1258 (S.D. Fla. 2013) ............................................................... 9

**Statutes**

§5 ............................................................................................................. 1
§III(B) ....................................................................................................... 7
42 C.J.S. Indemnity § 24 ............................................................................... 11
Bus. & Prof. Code § 17200 .......................................................................... 1, 4
California Penal Code §490.5 ........................................................................... 1

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

Del. Code Ann. tit. 8, § 265(e) ............................................................................................ 3
Del. Code Ann. tit. 8, § 265(f) ............................................................................................ 3
**Rules**

Fed.R.Civ.P. 12(c) ............................................................................................................... 6
Rule 12(b)(6) ...................................................................................................................... 23
Rule 12(c) ........................................................................................................................... 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA  94105-2994

# I.   <u>INTRODUCTION</u>

Plaintiff Sephora USA, Inc. retained the law firm of Palmer Reifler & Associates ("PRA") to "represent [Sephora] in pursuing damages and/or civil penalties for theft offenses."  Such damages are available under California Penal Code §490.5, which creates a private right of action for merchants to recover damages against individuals caught shoplifting.  PRA was retained pursuant to a 2005 Attorney/Client Services Agreement ("Engagement Letter"), which expressly provides that "the law firm shall perform its services in accordance with all laws and regulations, including without limitation all laws relating to the pursuit of, and collection for, theft claims."[1]  The Engagement Letter further provided that PRA "agrees to defend and indemnify [Sephora] against any and all suits, judgments or liabilities directly arising from the negligence or other improper conduct of [PRA]."[2]

In July 2014, a putative class action lawsuit, styled *Tamera Renn v. Sephora USA, Inc.*, was filed against Sephora in Los Angeles Superior Court alleging that "Palmer Riefler, as an agent for and on behalf of, Sephora" sent demand letters to California residents which misrepresented the remedies available to Sephora under California law, made unlawful demands for payment, and otherwise violated the Fair Debt Collection Practices Act, Bus. & Prof. Code § 17200, and the common law.  The *Renn* lawsuit is one of multiple lawsuits that have been filed across the country alleging that PRA sent fraudulent or misleading demand letters on behalf of its retailer clients, including a putative class action filed in 2012 against PRA and auto parts retailer, The Pep Boys, that remains pending in this district before Judge Corley four years' hence.[3]

Upon receipt of the *Renn* complaint, Sephora made written demand on PRA to defend and otherwise indemnify Sephora from and against the asserted claims.  PRA initially failed to respond to the demand, and subsequently refused to indemnify Sephora,

---

[1] *See* Exhibit 1 to Defendant's Request for Judicial Notice In Support of Motion for Judgment on the Pleadings ("PRA RJN"), at §1.
[2] *Id.*, at §5, p. 2.
[3] *Lee v. The Pep Boys, Palmer Reifler, et al.*, No. 3:12-cv-05064-JSC (N.D. Cal.)

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA  94105-2994

1    forcing Sephora to proceed with a defense of the suit at its own expense.  Sephora filed a

2    demurrer and a motion to strike the *Renn* complaint under California's Anti-SLAPP

3    statute.  Sephora prevailed on its Anti-SLAPP motion and judgment was entered for

4    Sephora on July 17, 2015.  Sephora thereafter filed the instant suit seeking reimbursement

5    for costs incurred in successfully defending the *Renn* lawsuit.

6         Although neither party has yet conducted any discovery, PRA now moves for

7    judgment on the pleadings.  The primary basis for the motion is an argument that PRA is

8    relieved of its contractual obligation to defend Sephora because Sephora asserted in its

9    initial demand letter that it retained the right to control its own defense.  This argument is

10   flawed for many reasons.  First, PRA's Engagement Letter did not grant PRA the right to

11   control Sephora's defense; nor did it specify any form of tender in order to obtain a

12   defense.  Second, and more importantly, it is clear under applicable Florida law that the

13   duty to defend is triggered by the filing of a potentially covered claim, not the tender of a

14   defense or any other action by the indemnitee.  Indeed, the law is plain that even if

15   Sephora had failed to provide PRA with ***notice*** of the lawsuit, PRA would nevertheless

16   have a duty to reimburse Sephora for expenses incurred in defense of the lawsuit unless it

17   could show that it had suffered substantial prejudice – something it has not done here and

18   manifestly can never do given the unrivaled speed with which Sephora dispatched the

19   *Renn* lawsuit.  Lastly, the Engagement Letter obligates PRA to defend ***and*** to indemnify

20   Sephora.  Accordingly, no matter the reason for PRA's failure to ***defend*** Sephora, PRA has

21   a duty to ***indemnify*** Sephora for its costs of defense now that the matter is concluded.

22        PRA next argues, in a further bit of sophistry, that it need not defend Sephora

23   because there has been no finding that PRA ***actually*** engaged in negligent or improper

24   conduct.  This argument turns both logic and applicable law on its head.  In essence, PRA

25   argues that it has no duty to provide Sephora with a defense unless and until the lawsuit

26   has been litigated to a judgment and PRA's conduct determined unlawful; at which point,

27   of course, Sephora would no longer need a defense (though it would require indemnity).

28   The argument ignores long-established law that the duty to defend springs from the filing

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

of the underlying complaint and arises irrespective of whether the suit is ultimately meritorious.  It also improperly conflates the duty to indemnify and the duty to defend, and would thereby have the effect of retroactively reading the duty to defend out of the parties' agreement.  Finally, PRA's position, if adopted, would create the perverse incentive for an indemnitee such as Sephora not to defend the lawsuit at all, and instead to concede PRA's wrongdoing and invite a judgment against it in order to secure coverage.  A legal standard that punished Sephora for its unquestionable success in defending the lawsuit simply makes no sense.

Lastly, PRA argues that the law disfavors agreements which indemnify a party for its own wrongdoing and then labors mightily to characterize the *Renn* complaint as alleging wrong doing *by Sephora*, rather than PRA.  However, even a cursory review of the complaint makes clear that it is PRA's conduct which forms the basis for Renn's claims.  The complaint uses different phraseology in different places -- "Palmer Riefler, acting on behalf of Sephora," "Sephora through its agent, Palmer Riefler," and "Palmer Riefler, as an agent for and on behalf of, Sephora" – but it is crystal clear throughout that Renn's claims are based on PRA's sending of allegedly misleading demand letters, and not anything that Sephora did or did not do.

For all of the foregoing reasons, PRA's motion for judgment on the pleadings must be denied.

## II.    FACTUAL BACKGROUND

Sephora retained the PRA law firm pursuant to a 2005 Engagement Letter to "represent [Sephora] in pursuing damages and/or civil penalties for theft offenses."  *See* PRA RJN, Ex. 1, §1.1[4]  Pursuant to California Penal Code §490.5, retail merchants such as Sephora are entitled to recover damages of between $50 and $500 "plus costs" in a civil action against individuals caught shoplifting, or, if the shoplifter is a minor, against a

---

[4]  The Engagement Letter was executed between Sephora USA, *LLC* and PRA.  Subsequent to the execution of the Engagement Letter, Sephora underwent a corporate conversion and name change to Sephora USA, *Inc.*  However, under Delaware law, conversion from an LLC to a corporation does not create a new or different entity, nor affect the rights or obligations of the LLC.  Del. Code Ann. tit. 8, § 265(e), (f).  Accordingly, Sephora has standing to bring suit under the Engagement Letter.

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA  94105-2994

parent or guardian.  The Engagement Letter expressly obligates PRA to "perform its services in accordance with all laws and regulations, including without limitation all laws relating to the pursuit of, and collection for, theft claims."  *Id*.  The Engagement Letter further obligates PRA to "defend and indemnify" Sephora "from and against any and all suits, judgments, or liabilities directly arising from [PRA's] negligence or other improper conduct."  *Id.* at §5.

### A.   The *Renn* Lawsuit

On January 24, 2014, Tamera Renn's minor daughter, Shannon, was detained for shoplifting at a Sephora store in Glendale, California.  PRA RJN, Exh. 2, at ¶ 22.  The police released Shannon to her mother and the District Attorney did not press charges.  *Id*.  On July 14, 2014, Renn filed a putative class action lawsuit in the Los Angeles Superior Court asserting four causes of action: violation of Bus. and Prof. Code §17200, intentional misrepresentation, fraud and declaratory relief.  *Id.*  Although the complaint was brought against Sephora, each of the four claims is premised upon the same acts and practices of Palmer Riefler; specifically, sending a sequence of intentionally deceptive demand letters and collecting payments based upon those letters.  The complaint uses different phraseology in different places -- "Palmer Riefler, acting on behalf of Sephora," "Sephora through its agent, Palmer Riefler," or "Palmer Riefler, as an agent for and on behalf of, Sephora" – however, it is clear that the allegedly improper conduct which forms the basis of Renn's claims was the conduct of Palmer, Riefler, and not Sephora.

Renn alleged that the first PRA demand letter, sent on February 3, 2014, was "unfair and misleading" because it "overstate[d] the relief" to which Sephora was legally entitled, failed to disclose that Renn had a right to dispute the basis for the claim, threatened litigation when PRA "had not yet conducted a review of the individual facts of the claim or the remedies available under state law and that it had no present good faith intention, at the time of the demand letter, to pursue the litigation threatened or good faith belief that its client, Sephora, was entitled to the sum demanded."  *Id.* ¶¶24-27, Ex. A to

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA  94105-2994

1    Complaint.[5]

2          Renn alleged that the second demand letter, sent on February 28, 2014, was

3    "unlawful, unfair and fraudulent" because, *inter alia*, it demanded: (1) $775 – an amount

4    55% greater than the allowable statutory recovery (*Id.* at ¶ 29); and (2) $10 installment fees

5    in the absence of any statutory basis for the recovery of such fees.  *Id.* at ¶ 32, Ex. B.

6    Following her receipt of the second demand letter, Renn retained an attorney.  *Id.* at ¶ 34.

7          On April 3, 2014, PRA sent a third demand letter to Renn's counsel.  *Id.* at ¶ 35,

8    Exh. C.  The third demand letter offered to release Renn from liability for a civil

9    shoplifting claim in exchange for a lump sum payment of $200.00.  *Id*.  Renn alleges that

10   this letter - like the two that preceded it - contains unlawful, unfair, fraudulent, and

11   misleading statements regarding Renn's potential liability vis-à-vis the theft occurrence.

12   *Id.* at ¶ 37.  After receiving the third demand letter, Renn made a $200.00 payment and

13   obtained a release from PRA.  *Id*. at ¶¶ 46 -47, 49, Exh. D.

14        **B.      Sephora's Demand to PRA and its Defense of the Lawsuit**

15         Eleven days after receiving notice of the *Renn* lawsuit, Sephora sent a letter to

16   PRA's Natt Riefler demanding pursuant to §5 of the Engagement Letter that PRA "defend

17   and indemnify Sephora from and against the claims in the Renn Complaint, including but

18   not limited to the cost of defense and the amount of any judgment or other relief that might

19   be awarded to the plaintiff and/or the putative class."  PRA RJN, Exh. 10, p. 1-2.  Having

20   received no response from PRA to Sephora's demand,[6] on November 14, 2014, Sephora

21   filed a demurrer and a motion to strike the *Renn* complaint under California's Anti-SLAPP

22   statute.  PRA RJN, Exhs. 3-6. By written decision dated June 18, 2015, the Superior Court

23   granted the motion to strike.  Judgment was entered July 17, 2015.  PRA RJN, Exh. 9.  The

24   plaintiff did not appeal, and the *Renn* action is now concluded.

25

26   [5] See PRA RJN, Ex. 2, Ex. A.  The three PRA demand letters are attached as Exhibits A, B and C to the Renn
     Complaint.

27   [6] Sephora received no formal response from PRA to its demand for a defense and indemnification until more than a
     year later, in November 2015, when PRA formally refused to reimburse Sephora for costs incurred in defense of the
28   lawsuit.  *See* Request for Judicial Notice and Declaration in Support of Sephora's Opposition to Motion for Judgment
     on the Pleadings ("Sephora RJN."), Exs. 1, 2.

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA  94105-2994

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

**C.      Other Lawsuits Based On PRA's Sending of Allegedly Deceptive Demand Letters**

The Renn complaint is one of many lawsuits that have been brought against PRA and/or its retailer clients based on PRA's sending of allegedly deceptive demand letters. *See, e.g.*, *Lee v. The Pep Boys, Palmer Reifler, et al.*, No. 3:12-cv-05064-JSC (N.D. Cal. 2012) (suit against Pep Boys and PRA based on allegedly misleading and unlawful form demand letters.); *Mitchell v. Palmer, Reifler & Associates, P.A.,* Case No. 1:14-cv-00588 (E.D. NY 2014) (suit based on PRA's allegedly false and deceptive demand letters.); *Kelly v. Palmer, Reifler & Associates, P.A.,* Case No. 1:08-cv-21843 (S.D. Fl. 2008) (suit against PRA based on its deceptively worded demand letters.); *Sweeney et al. v. Federated Retail Holdings, Inc., et al.,* Case No. 2:06-cv-10887 (E.D. Mich. 2006) (suit against Macy's and PRA, et al. based on allegedly misleading demand letters).

Notably, the most recent of the foregoing cases, *Lee v. Pep Boys*, remains pending in this District before Judge Corley some four years after filing; plaintiff's claims having survived two motions to dismiss and a motion for judgment on the pleadings. *See Docket for* No. 3:12-cv-05064-JSC.

## III.   LEGAL ANALYSIS

### A.      Legal Standard

After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed.R.Civ.P. 12(c). Judgment on the pleadings is proper when the moving party "clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir.1989). For purposes of the motion, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Id.*; *see also Savage v. Council On American-Islamic Relations, Inc.*, 2008 WL 2951281 (N.D. Cal. 2008). Moreover, all inferences reasonably

1    drawn from the facts alleged in the complaint must be construed in favor of the responding

2    party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

3        In the event a motion for judgment on the pleadings is granted, leave to amend

4    should be freely granted and will be denied only if it is clear that the deficiencies of the

5    complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d

6    655, 658 (9th Cir. 1992); *Moran v. Peralta Cmty. Coll. Dist.,* 825 F.Supp. 891, 893 (N.D.

7    Cal. 1993) *citing Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir. 1979).

8    **B.    PRA's Argument That It Is Relieved of Its Duty to Defend Because
         Sephora Sought to Control Its Defense Is Directly Inconsistent with
9        Applicable Law and Cannot Be Resolved on the Pleadings in Any Event**

10       **1.    PRA's Duty to Defend Was Triggered by the Filing of the *Renn*
                 Complaint, Not By Sephora's Demand**

11

12       PRA's primary argument in support of its motion for judgment on the pleadings is

13   that although Sephora's July 25, 2014 demand letter invoked PRA's duty to defend it also

14   maintained that Sephora had contracted to retain control of its defense. Opp., at §III(B).

15   PRA argues that, as a result, Sephora's tender of the *Renn* lawsuit was defective and PRA

16   therefore had no duty to defend (or presumably to indemnify Sephora).  This argument

17   mischaracterizes the parties' agreement and, perhaps most importantly, is premised on a

18   misapprehension of applicable law.[7]  It must be rejected.

19       As an initial matter, PRA's Engagement Letter does not in any way limit Sephora's

20   right to control its own defense.  *See* PRA RJN, Ex. 1.  Nor does it purport to require

21   Sephora to tender the defense in order to obtain a defense or indemnity.  *Id.*  Thus, any

22   intimation by PRA that Sephora was contractually obligated either to tender the defense or

23   offer to cede control of the defense in order to obtain coverage is simply incorrect.

24       More importantly, the law is clear that the duty to defend is triggered not by the

25   tender of a defense, but by the filing of a potentially covered claim.  Thus, PRA's duty to

26   defend arose when the *Renn* lawsuit was filed, and was in no way dependent upon the form

27   of demand sent by Sephora, or indeed the sending of any demand at all.  Florida law

28   

---

[7] Sephora agrees with PRA that pursuant to the Engagement Letter, Florida law governs here.

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

distinguishes between two duties in the indemnification context: (1) the duty to defend; and (2) the duty to indemnify and hold harmless.  *See Florida Department of Transportation v. Southern Bell Telephone & Telegraph Co.*, 635 So. 2d 74, 78 (Fla. Dist. Ct. App. 1994).  Where a contract provides for both a duty to defend and a duty to indemnify, they are "entirely separate" and independent duties.  *Id.* ("duty to defend is entirely separate from [the] right to indemnification").  The duty to defend is triggered by "the nature of the claim" alleged against the indemnitee "regardless of whether the party asserting the claim should win or lose upon a final determination of the suit."  *J.A. Jones Construction Co. v. Zack Co.*, 232 So. 2d 447, 450 (Fla. Dist. Ct. App. 1970); *Auto Owners Ins. Co. v. Travelers Cas. & Sur. Co.*, 227 F. Supp. 2d 1248, 1258 (M.D. Fla.2002) ("Florida courts have adopted a strict rule that an insurer's duty to defend an action against its insured is determined solely by the allegations in the complaint.").  This is sometimes referred to as the "eight corners" rule because in determining whether a duty to defend has arisen the Court is limited to examining the four corners of the underlying complaint and the four corners of the indemnity agreement.  *See, e.g.*, *Colony Ins. Co. v. Barnes*, 410 F. Supp. 2d 1137, 1139 (N.D. Fla. 2005), *aff'd,* (11th Cir. 2006).

Because the duty to defend springs from the filing of a potentially covered claimed, an indemnitor's duty to defend "arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage."  *Jones v. Florida Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442-43 (Fla. 2005); *Trizec Props., Inc. v. Biltmore Construction Co.*, 767 F.2d 810, 811–12 (11th Cir.1985) (if "the complaint alleges facts which create potential coverage under the policy, the duty to defend is triggered.").  Accordingly, there is no requirement that an indemnitee tender the defense of a claim in order to trigger the indemnitor's duty to defend.  *See, e.g.*, *Mid-Continent Cas. Co. v. Basdeo* (S.D. Fla. 2010) 742 F. Supp.2d 1293, 1326 *aff'd,* (11th Cir. 2012) 477 Fed. Appx. 702; *Scottsdale Ins. Co. v. Shageer* (S.D. Fla., Dec. 1, 2010, No. 10-80418-CIV) 2010 WL 4961166, at *7-8 (rejecting argument that "formal tender" required to invoke duty to defend).  Indeed, the Florida Supreme Court has held that the duty to defend is triggered even where the

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

agreement expressly purports to require tender and the indemnitee violates the agreement by failing to even provide *notice* of the suit. *Jones v. Florida Ins. Guar. Ass'n, Inc.* ("*FIGA*"), 908 So. 2d 435, 452 (Fla. 2005); *Basdeo*, 742 F. Supp. 2d at 1326 (construing *FIGA* as necessarily finding that "the insurer's duty to defend was triggered, despite Pratt's apparent failure to request a defense."); *Yacht Club on the Intracoastal Condominium Ass'n, Inc. v. Lexington Ins. Co.*, 944 F. Supp. 2d 1258 (S.D. Fla. 2013) (failure to provide prompt notice "will only bar recovery when the failure is prejudicial to the insurer."); *Clarendon America Ins. Co. v. All Brothers Painting, Inc.*, 2013 WL 5921538, at *7 (M.D. Fla., Nov. 4, 2013) ("Where a policy of insurance requires the insured to give notice as a condition precedent to maintaining a claim, the violation of that provision will not defeat coverage unless the insurer suffers substantial prejudice."). Here, the Engagement Letter at issue did not purport to require tender of the defense. However, even if it had, PRA's duty to defend was not in any way dependent upon the manner in which Sephora fashioned its demand, nor whether it made any demand at all.

In fact, the law is clear that where an indemnitor receives notice of the claim it is relieved of its duty to defend ***only*** if the indemnitee affirmatively refuses to cooperate ***and*** the indemnitor ***is materially prejudiced*** thereby. *Phila. Indem. Ins. Co. v. Kohne*, 181 F. App'x 888, 891 (11th Cir. 2006) (*citing Ramos v. N.W. Mut. Ins. Co.*, 336 So. 2d 71, 75 (Fla. 1976) (indemnitor relieved of obligation to defend only if it can prove: (1) indemnitee failed to cooperate; (2) lack of cooperation was material; (3) indemnitor was substantially prejudiced by lack of cooperation; and (4) indemnitor exercised diligence and good faith in complying with the terms of the agreement and trying to bring about indemnitee's cooperation.). Nowhere in its motion does PRA demonstrate either that Sephora refused to cooperate in its defense or that PRA was substantially prejudiced by Sephora's control of its defense. This is because it cannot. Documents subject to judicial notice make plain that Sephora's defense of the *Renn* lawsuit was exemplary, and far superior to PRA's own efforts to defend a near-identical lawsuit pending before another court in this District, in

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

1   which the complaint has survived two motions to dismiss and a motion for judgment on

2   the pleadings.[8]

3         As the foregoing makes clear, PRA's duty to defend Sephora was triggered by the

4   filing of the *Renn* complaint and was not in any way dependent upon Sephora sending a

5   demand for a defense, or the form of such demand.  In order to be relieved of its duty to

6   defend, PRA would have to demonstrate that it made a good faith effort to provide a

7   defense, that Sephora refused to accept it and otherwise failed to cooperate in its defense,

8   and that PRA was substantially prejudiced thereby.  *Kohne*, 181 F. App'x at 891.  PRA

9   fails even to attempt such a showing here.  PRA's argument is contrary to established law,

10  cannot be resolved on the pleadings in any event, and must be rejected.

### 2.   PRAs' argument must also be rejected because it ignores Sephora's right to be indemnified for its costs of defense

13        PRA's first argument – indeed, its entire motion -- focuses narrowly and

14  exclusively on the duty to defend arising from the Engagement Letter; presumably so that

15  it may characterize Sephora's request as a "demand for reimbursement," which it contends

16  does not exist, rather than the tender of a defense.  It is undisputed, however, that PRA's

17  Engagement Letter contemplates both a duty to defend ***and*** a duty to indemnify.  PRA

18  RJN, Ex. 1, §5.  It is further undisputed that Sephora's July 25, 2014 demand letter to PRA

19  invoked both duties, demanding that "PRA bear the costs to defend and indemnify Sephora

20  from and against the claims in the Renn Complaint, including but not limited to the cost of

21  defense and the amount of any judgment or other relief that might be awarded to the

22  plaintiff and/or the putative class." [9]  Finally, Sephora's complaint in this action similarly

23  invokes both PRA's duty to defend and its duty to indemnify.  Docket #1, ¶¶11, 15, 19.

24  Yet inexplicably, PRA's motion ignores entirely its duty to indemnify, which provides an

25  alternative, but equally sound, basis for Sephora's claim for breach of the Engagement

26  Letter here.

27  _____

28  [8] *See, e.g., Lee v. The Pep Boys, Palmer Reifler, et al.*, No. 3:12-cv-05064-JSC (N.D. Cal. 2012).
[9] PRA RJN, Ex. 10.

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

As explained above, under Florida law, the duties to defend and indemnify are separate duties arising from the language of the contract. *Florida Department of Transportation*, 635 So. 2d at 78. Where an indemnitor breaches its duty to defend, the indemnitee may sue for recovery of the attorney's fees and costs incurred in defending the suit. *Florida Ins. Guaranty Ass'n, Inc. v. All The Way With Bill Vernay, Inc*., 864 So.2d 1126, 1129 (Fla. Dist. Ct. App. 2003); *Thomas v. W. World Ins. Co.*, 343 So.2d 1298, 1303 n. 3 (Fla. 2d DCA 1977) (holding that when an insurer's refusal to defend is unjustified, the insurer is liable for attorney's fees and other costs incurred in the underlying action). In addition, and apart from any duty to defend, a duty to indemnify includes a duty to reimburse the indemnitee for costs incurred in the successful defense of a covered claim. *Brown v. Financial Indemnity Co.*, 366 So. 2d 1273, 1274 (Fla.App. 1979) ("'[A]n indemnitee is entitled to recover, as a part of the damages, reasonable attorney's fees, and reasonable and proper legal costs and expenses, which he is compelled to pay as a result of suits by or against him in reference to the matter against which he is indemnified."); *Shannon v. Kaiser Aluminum and Chemical Corp.,* 749 F. 2d 689, 690-91 (11th Cir. 1985). This rule is equally applicable whether the indemnitee is successful in his defense of the suit or not. *Shannon,* 749 F. 2d 689, 690-91 (indemnitee entitled to recover costs incurred in successful defense of covered claim); *see also Mutual Employees Trademart, Inc. v. Armour Service of Florida, Inc.*, 170 So.2d 64 (Fla. App. 1964); 42 C.J.S. Indemnity § 24 ("An indemnitor is liable for attorney's fees whether the defense is successful or not; and it is not necessary that an indemnitee have paid legal fees in order to recover them under an indemnity clause, but only that they have been incurred.").

Sephora has invoked both its right to a defense and its right to indemnity, "including but not limited to the cost of defense," in both its demand letter and by its complaint here. Accordingly, even if Sephora did not have a claim for breach of PRA's duty to defend it – which it plainly does – it has a separate and independent claim for indemnity, including a right for reimbursement of its costs incurred in successfully defending the *Renn* lawsuit. PRA's argument that Sephora failed to properly tender a

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

defense and therefore cannot state a claim is not only wrong, but fails even to address Sephora's right to indemnity.  This argument cannot entitle PRA to judgment on the pleadings.

**C.      PRA's Argument That It's Duty to Defend Arises Only If It Is First Determined That "Actual Negligence or Improper Conduct . . . Exists" Is Illogical, Is Contrary to Law, and Would Render the Duty to Defend Illusory**

For its next argument, PRA contends that because the Engagement Letter creates a duty to defend for suits, judgments or liabilities "arising directly from the negligence or other improper conduct" of PRA, the mere "'allegation' of PRA's fault is not sufficient to trigger PRA's duty to defend Sephora."  MJOP, p. 16, lines 4-15.  Rather, PRA argues, the duty to defend arises only "where [1] actual negligence or other improper conduct on PRA's part exists, and [2] that wrongful conduct is the source of Renn's claim."  MJOP, p. 16, lines 15-17.  That is, PRA contends that unless and until there is a finding of negligence or improper conduct on the part of PRA, it has no duty to defend Sephora.  This argument is directly contrary to long-established law, improperly conflates the duty to defend with the duty to indemnify, and, if accepted, would create perverse incentives for indemnitees to intentionally lose the underlying case in order to establish the indemnitor's liability.  For all of these reasons, it must be rejected.

**1.      The argument that no duty to defend arises from a mere "allegation" is directly contrary to long-established law**

As explained at length above, it is axiomatic under Florida law that the "duty to defend is based entirely 'on the facts and legal theories *alleged* in the pleadings and claims against the insured.'"  *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1275 (11th Cir. 2008) (emphasis added); *Auto Owners*, 227 F. Supp. 2d at 1258 ("Florida courts have adopted a strict rule that an insurer's duty to defend an action against its insured is determined solely by the *allegations* in the complaint.") (emphasis added); M*etropolitan Dade County v. CBM Industries of Minnesota, Inc*. 776 So.2d 937, 938 (Fla. Dist. Ct. App. 2000) (Accordingly, "[i]n considering whether a party has a duty to defend

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

1    an underlying lawsuit, the trial court is limited to reviewing the ***allegations*** raised in the

2    underlying Complaint.") (emphasis added).  Indeed, the allegations in the complaint

3    control even when the actual facts are inconsistent with the allegations in the complaint.

4    *FIGA*, 908 So.2d at 443.  In fact, once a court finds a duty to defend, the duty continues

5    "even though it is ultimately determined that the alleged cause of action is groundless and

6    no liability is found within the policy provisions defining coverage." *Baron Oil Co. v.*

7    *Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 814 (Fla. Dist. Ct. App. 1985).

8    Accordingly, PRA's argument that "Renn's supposed 'allegation' of PRA's fault is not

9    sufficient to trigger PRA's duty to defend Sephora" is directly and irretrievably

10   inconsistent with Florida law.  It is ***precisely*** the allegations of the Renn complaint – and

11   nothing more – to which the Court is commanded to look in determining whether PRA

12   breached its duty to defend Sephora in the *Renn* lawsuit.

13          PRA's further argument that a duty to defend could be found in this case only

14   where "actual negligence or other improper conduct" is found to "exist" is just as soundly

15   rejected under Florida law.  It is established beyond doubt that the existence of the duty to

16   defend is determined by "the nature of the claim" alleged against the indemnitee

17   "***regardless of whether the party asserting the claim should win or lose upon a final***

18   ***determination of the suit***."  *J.A. Jones Construction*, 232 So. 2d at 450 (emphasis added).

19   The indemnitor must offer a defense when the complaint alleges facts that fairly and

20   potentially bring the suit within coverage.  *FIGA*, 908 So.2d at 442–43.  The existence of

21   the duty is not dependent upon whether the claims are meritorious, or the existence of

22   "actual" wrongdoing or fault on the part of the indemnitee.  *Pepper's Steel & Alloys, Inc. v.*

23   *U.S. Fidelity and Guar. Co.*, 668 F.Supp. 1541, 1545-48 (S.D. Fla. 1987) (duty to defend

24   "depends upon the allegations in the complaint of the third party in his or her action

25   against the insured, [and] is not limited to meritorious suits and may even extend to actions

26   which are groundless, false or fraudulent, so long as the allegations against the insured

27   even arguably come within the policy coverage.").  Indeed, the duty to defend "is not

28   affected by the merits of the third party's claim or the likelihood that the claim will

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

ultimately be successful; an insured is entitled to a defense by its insurer against even the most frivolous suit, so long as it describes an occurrence within coverage." *Travelers Indem. Co. of Illinois v. Royal Oak Enterprises, Inc.* (M.D. Fla. 2004) 344 F.Supp.2d 1358, 1365 *aff'd sub nom. Travelers Indemnity Co. of Ill. v. Royal Oak Enterprises, Inc.* 171 Fed. Appx. 831 (11th Cir. 2006); *Basdeo*, 742 F.Supp.2d at 1324 ("[T]he duty to defend stands regardless of the true facts that gave rise to the cause of action against the insured, the insured's version of those facts, or the insured's defenses to the underlying complaint."). Accordingly, PRA's argument here that only the existence of "actual" negligence or improper conduct on the part of PRA could trigger a duty to defend is directly irreconcilable with decades of Florida law regarding the duty to defend.  Whether the *Renn* allegations of wrongdoing on the part of PRA ultimately had merit is entirely irrelevant to the determination of whether PRA had a duty to defend.

## 2. PRA's Argument that a Duty to Defend Arises Only Where Actual Negligence Is Found to Exist Also Puts the Cart Before the Horse

There is a sound policy reason for the well-worn legal principle that the existence of a duty to defend is determined based on the allegations – i.e., at the outset of the case -- and is implicated where there is even the *potential* for indemnity coverage.  If, as PRA posits, the duty to defend arose only after a determination has been made that the indemnitor engaged in wrongdoing, the indemnitor would never have a duty to defend until *after* the lawsuit had proceeded to judgment – at which point, the indemnitee would have had to go it alone, and would not need a defense, but rather indemnity.  PRA's position would thus conflate the duty to defend with the duty to indemnify; effectively rendering the duty to defend illusory.  Any interpretation of §5 of the Engagement Letter that would read the duty to defend out of the agreement is manifestly unreasonable and could not have been intended by the parties.[10]

---

[10] As support for this utterly illogical interpretation, PRA argues that the indemnity provision must be construed against Sephora because in the non-insurance context, indemnity provisions are narrowly construed.  MJOP, p. 16, lines 17-22.  It is equally well established, however, that where there is ambiguity in an attorney-client service agreement, the agreement must be construed against the attorney and in favor of the client. *Arabia v. Siedlecki*, 789

Furthermore, if, as PRA argues, the duty to defend could arise only in the event there is "actual" negligence or improper conduct by PRA, Sephora would have been best served not by vigorously and efficiently defending the *Renn* lawsuit, but by offering to admit PRA's wrongdoing and inviting a judgment against it so that Sephora could be assured of coverage.  Thus, PRA's argument, if adopted, would create perverse incentives for an indemnitee to concede the indemnitor's liability in order to secure a defense from the indemnitor.  Such a holding would represent extraordinarily bad public policy, would not benefit PRA in the end and, thankfully, is not the law.

### 3.    PRA's Reliance on *Rountree* Is Misplaced

Perhaps understandably, PRA's motion largely ignores the long line of cases discussed above.  PRA instead premises its argument entirely on a single decision from the Eleventh Circuit: *National Railroad Passenger Corp, Inc. v. Rountree Transport and Rigging Co.*, 286 F.3d 1233 (11th Cir. 2002).  That case arose from an accident in which an Amtrak train collided with a truck owned by Rountree being used to transport a combustion turbine purchased from GE on a railroad crossing constructed by the Kissimmee Utility Authority ("KUA") over a CSX rail line.  After various lawsuits were consolidated, KUA moved for summary judgment on the issue of GE's duty to reimburse KUA for its costs of suit pursuant to an indemnity provision in the turbine purchase agreement.  That provision stated that GE "shall defend, indemnify, and hold harmless [KUA] . . . to the extent of and on account of any negligent act or omission of [GE] in performing the work under the Contract."  286 F. 3d at 1260.  KUA sought indemnity from GE because plaintiffs had sought to hold KUA vicariously liable for GE's negligence.  The trial court denied KUA's motion, holding that because KUA was not vicariously liable for GE's negligence as a matter of law, it could only be found liable at trial based on its own

So. 2d 380, 383 (Fla. Dist. Ct. App. 2001); *Vargas v. Schweitzer-Ramras*, 878 So. 2d 415 (Fla. Dist. Ct. App. 2004) ("[R]etainer agreements are construed against the attorney and in favor of client.").  Even were that not the case, a rule of narrow construction would never dictate that the Court adopt a patently illogical construction that would render the provision entirely illusory.

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA  94105-2994

negligence. *Id.* at 1260.  It then held in reliance on decisions disfavoring indemnifying a party for its own wrongdoing that GE had no duty to reimburse KUA as a matter of law.

The Court of Appeal determined that the trial court erred by focusing on decisions regarding the duty to indemnify, and instead should have "follow[ed] the methodology commonly employed by Florida courts in the duty-to-defend context, where the focus is on the claims raised against the indemnitee, not on the ultimate success of those claims." *Id.* at 1262.  However, the Court of Appeal found that the trial court nevertheless reached the correct result "because the plain language of the indemnification provision in the Purchasing Agreement trumps the rules that would otherwise apply in a duty-to-defend context." *Id.* at 1263.  In reaching its conclusion, the Court of Appeal focused on the unique language of the GE indemnity provision; in particular, the language providing that GE had to pay "damages, losses and expenses . . . only 'to the extent of and on account of any negligent act or omission of Contractor [GE] in performing the work under the Contract.'" *Id.* at 1262 (emphasis in original).  The Court of Appeal concluded "that the 'to the extent of and on account of' language indicates that any payment of attorney's fees or other expenses is limited to situations where GE itself has been found negligent." *Id.*  It further held that "because the district court held as a matter of law that GE was free of direct negligence for the collision, GE is not required to reimburse [KUA] for their attorney's fees or other expenses incurred in defending themselves." *Id.*

PRA argues that because the indemnity provision in PRA's Engagement Letter states that it "agrees to defend and indemnify [Sephora] from and against any and all suits, judgments or liabilities directly arising from the negligence or other improper conduct of [PRA]," the *Rountree* analysis should also apply here.  The Court should reject PRA's invitation to extend the *Rountree* decision.

First, the *Rountree* court made clear that its decision to deny reimbursement to KUA was based on the particular contractual provision before it, explaining that the "plain language" of the indemnification provision in that case "trumped the usual rules that would otherwise apply in the duty-to-defend context." *Id.* at 1263.  In particular, the *Rountree*

Bryan Cave LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105-2994

court emphasized that the provision offered coverage only **to the extent of** and **on account of** GE's negligence.  The indemnity provision in PRA's Engagement Letter includes neither the "to the extent of" nor the "on account of" language which the *Rountree* court premised its ruling.  Thus, the key contractual elements which the *Rountree* court found dispositive are lacking here.  Furthermore, although the provision at issue here provides that any suit must arise "directly" from PRA's conduct, the term "directly" speaks to the immediacy of the connection between PRA's conduct and the ensuing suit – a connection about which there is no doubt here -- and cannot be read to convert what is plainly termed a duty to "defend and indemnify" into simply a duty to indemnify.  The *Rountree* case is therefore readily distinguishable from this case based on the substantial and material differences in the indemnity provisions at issue.

However, even if the *Rountree* decision **had** been on all fours with this case, this Court should not follow it.  As a decision of the 11th Circuit, it is not binding on this Court. *Bonner v. City of Prichard, Ala.*, 661 F. 2d 1206, 1209 (11th Cir. 1981) ("Under the established federal legal system the decisions of one circuit are not binding on other circuits.").  In addition, although the Engagement Letter provides for the application of Florida law, issues of state law are in the first instance to be decided by state courts, and federal court decisions that are contradicted by state courts decisions on issues of state law are to be disregarded.  *Nussbaum v. Mortgage Service America Co.*, 913 F. Supp. 1548, 1554 (S.D. Fla. 1995); *see also Owen v. United States*, 713 F.2d 1461. 1464 (9th Cir. 1983).  The Eleventh Circuit's decision in *Rountree* is directly inconsistent with well-established Florida law as determined by both prior **and** subsequent state and federal court decisions.  Those decisions uniformly hold that the duty to defend is determined at the outset of the litigation based on the allegations of the complaint, and not retroactively based on the ultimate merits of those claims.  *See, e.g., Jones*, 908 So.2d at 442–43; *Basdeo*, 742 F.Supp.2d at 1324 ("[T]he duty to defend stands regardless of the true facts that gave rise to the cause of action against the insured, the insured's version of those facts, or the insured's defenses to the underlying complaint."); *Pepper's Steel*, 668 F.Supp. at

Bryan Cave LLP
560 Mission Street, 25th Floor
San Francisco, CA  94105-2994

1545-48 (duty to defend "is not limited to meritorious suits and may even extend to actions which are groundless, false or fraudulent, so long as the allegations against the insured even arguably come within the policy coverage."); *Royal Oak Enterprises, Inc.* 344 F.Supp.2d at 1365.

The *Rountree* court did precisely the opposite.  It held that because GE was ultimately determined by the trial court to "be free of direct negligence" in causing the accident, it was "not required to reimburse the Indemnitee Appellants for their attorney's fees or other expenses incurred in defending themselves." *Id.* at 1262.  In so doing, it did precisely what it accused the trial court of doing incorrectly – conflating the duty to indemnify with the duty to defend.  Under the *Rountree* decision, GE could **never** have had a duty to **defend** KUA, as the existence of that duty could not be determined until the question of GE's negligence had been resolved.  In effect, the *Rountree* court's decision retroactively wrote the duty to defend out of the GE Contract.  The decision is unsound and this Court should not follow it.  In the more than fourteen years since *Rountree* was decided, it appears that no court has followed *Rountree* on this issue.  In fact, the only decision Sephora was able to locate which cited *Rountree's* decision on the issue questioned its logic and distinguished the decision based on the different language used in the provision before the court.  *See Continental Motors, Inc. v. Jewell Aircraft, Inc.*, 2013 WL 5498264, at *7 (S.D. Ala., Oct. 2, 2013) ("More broadly, Jewell Aircraft's reading of the 'to the extent' phrase as importing a concept of fault (and, indeed, a requirement of a jury determination of fault by Jewell Aircraft) fails because it is not supported by any reasonable construction of the contractual language.").  The *Rountree* decision is flatly inconsistent with decades of Florida law on the duty to defend, constitutes bad policy, and, as other courts have plainly determined, should not be extended.

The *Renn* complaint fairly alleges improper conduct on the part of PRA – the sending of misleading demand letters -- for which it seeks to hold Sephora liable.  Under these circumstances, and decades of Florida law, PRA had a duty to defend Sephora and it matters not at all that Sephora was successful in having those claims dismissed on an Anti-

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA  94105-2994

SLAPP motion.  Indeed, it is clear that had Sephora's motion been unsuccessful, and *Renn* had prevailed on her claims, even PRA would concede that Sephora was entitled to indemnity for the judgment.  The law is not such that Sephora is to be punished for its success in defending itself – and in the process saving PRA from having to satisfy a massive class action judgment.[11]  PRA's argument that Sephora must have lost in order to obtain indemnity must be rejected.

### D.    PRA's Argument that the *Renn* Complaint Alleged Wrongdoing By Sephora and Not PRA is Simply Not Accurate

For its final argument, PRA cites to decisions disfavoring indemnification of a party for its own wrongdoing and then spends next the four pages of its brief laboring mightily to convince the Court that the *Renn* complaint actually alleges wrongdoing by Sephora, rather than PRA.  But even a cursory review of the *Renn* complaint makes clear that PRA's argument is entirely contrived and blatantly misrepresents Renn's allegations and the basis for her claims.

### 1.    Renn Alleges That PRA Runs A "Demand Letter Mill"

The *Renn* complaint alleges that Sephora used "a Florida-based law firm, Law Offices of Palmer, Reifler & Associates, P.A." to operate  a "'demand letter mill.'"  PRA RJN, Ex. 2, ¶ 4.  It asserts that

> Palmer Reifler sends more than a million letters a year to consumers in the United States, including consumers accused of shoplifting from Sephora stores in California. Although the demand letters sent to California consumers reference California Penal Code § 490.5, the letters are not tailored to conform to California law, and demand damages and fees that are not authorized in California.

*Id.*, ¶ 4.  With respect to the relationship between PRA and Sephora, the Complaint alleges:

---

[11] It is instructive to note that Mag. Judge Corley has rejected PRA's argument that PRA's form demand letters, materially identical to those at issue here, were not unfair as a matter of law in *Lee v. The Pep Boys, Palmer, Reifler, et al.*, Case 3:12-cv-05064-JSC.  *See, e.g.,* Sephora RJN, Ex. 3, p. 6, lines 14-16 (Order Granting In Part And Denying In Part Defendants' Motion For Judgment On The Pleadings) ("The letter can plausibly be read to demand payment of $625 to satisfy only Pep Boys' claim 'pursuant to [Section] 490.5,' even though Pep Boys would be able to seek only up to $500 pursuant to that statute.  The Court cannot say this practice is not 'unfair' as a matter of law."); Ex. 4, p. 12, lines 13-14 (Order Granting In Part And Denying In Part Defendants' Motion To Dismiss) ("Regarding the unlawful prong, Plaintiff has adequately alleged a violation of the FDCPA against . . . Palmer.").

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA  94105-2994

1

2

3

4

> [C]lients such as Sephora enter into a contract with Palmer Reifler to act as their agent for the recovery of amounts from consumers in exchange for a percentage of the money paid in response to its demand letters. In the demand letters, Palmer Reifler acknowledges and represents that it is acting on behalf of Sephora. In correspondence with California consumers, Palmer Reifler refers to Sephora as its "client." At all times and in connection with all of the acts alleged herein, Palmer Reifler was the agent of Sephora.

5

*Id.*, ¶20.

6

7

8

9

10

11

The complaint further alleges that "Palmer Reifler, acting on behalf of Sephora, sends the parent/guardian of accused minor shoplifters a form demand letter for a pre-set sum threatening that if 'payment [is not] made on time,' Sephora may choose to make a higher request or institute litigation in which it 'will likely seek any available attorney's fees, court costs and other legal expenses throughout such litigation.'" *Id.* at ¶5.  The complaint continues:

12

13

14

> If the consumer "fails to make payment after written demand to do so, Sephora through its agent, Palmer Reifler, escalates the demand: it informs the consumer that in order to "settle this matter," s/he must pay an even higher amount that may exceed the maximum statutory damages available in an action under California Penal Code §490.5, or else risk further litigation and liability for (unauthorized) attorneys' fees and other damages.

15

*Id.*, ¶6.

16

### 2.    The Renn Demand Letters

17

18

19

20

21

22

The complaint alleges that on January 25, 2014, Renn's daughter, Shannon, was detained for shoplifting at a Sephora retail store.  *Id.*, ¶22.  Renn alleges that Shannon was released after providing personal information and no charges were filed.  *Id.* The complaint asserts that thereafter "Plaintiff Renn received a series of escalating demand letters from Sephora through its agent Palmer Reifler" that were "replete with misrepresentations and are unlawful, unfair, and fraudulent."  *Id.* at ¶23.

23

24

25

26

27

With respect to each of three letters sent to Renn, the complaint is crystal clear that they were prepared and sent by PRA.  For example, with respect to the first demand letter it alleges that "just one week after the incident, Sephora, through its agent Palmer Reifler, sent Plaintiff Renn a demand letter . . . printed on Palmer Reifler letterhead and purportedly signed by an attorney licensed to practice in California ...."  *Id.* at ¶24.  The

28

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA  94105-2994

complaint alleges that "Following the Second Demand Letter, Plaintiff Renn began receiving telephone calls from Palmer Reifler regarding the demanded payment." *Id.* at ¶33.  A third demand letter, "signed by Natt O. Reifler, an attorney with Palmer Reifler," was allegedly sent to Renn's counsel which "made unlawful, unfair, fraudulent, and misleading statements regarding Ms. Renn's potential liability." *Id.* at ¶37, 41.

The Renn Complaint asserts four causes of action, each of which is premised ***entirely*** on the demand letters sent by PRA.  The UCL claim alleges that "Sephora committed and it continues to commit acts of unfair competition proscribed by the UCL, including the practices alleged herein in connection with the First Demand Letter, the Second Demand Letter, the Third Demand Letter, and the collection amounts pursuant thereto." *Id.* at ¶ 58.  The second claim, for intentional misrepresentation, alleges that "Palmer Reifler, as an agent for and on behalf of, Sephora, sends a sequence of standard form demand letters that misrepresent facts upon which Palmer Reifler intends the recipient to rely," and that the "letters that Palmer Reifler, as an agent for Sephora, sent Plaintiff Renn misrepresent material facts," including that "an attorney has reviewed the merits of Sephora's claim," that "the failure to pay the demand will subject the recipient to increased civil liability," and that "the recipient may be subject to criminal prosecution." *Id.* at ¶ 69-70.  The third claim, for fraud, mirrors the second claim, asserting that "Sephora, though its agent Palmer Reifler," sent a series of demand letters which were replete with misrepresentations regarding the remedies available under California law and Renn's potential liability. *Id.* at 80-88.  Renn's fourth and final claim is for declaratory relief, seeking a declaration that the foregoing acts and practices "as herein alleged" are unlawful, unfair, and fraudulent. *Id.* at ¶ 90-92.

Significantly, although the *Renn* Complaint alleges that Shannon Renn "was detained by Sephora employee security personnel who obtained personal information from Shannon and called the local police who released Shannon to her mother,"[12] none of Renn's four causes of action is in any way premised upon her daughter's apprehension by

---

[12] *Id.* at 22.

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA  94105-2994

1    Sephora employees.  Furthermore, although Renn alleges in passing at the outset of the

2    complaint that "Sephora is a knowing participant in such an unlawful scheme," nowhere

3    does she allege that Sephora had any active participation in any of the allegedly wrongful

4    acts alleged, all of which were undertaken by PRA.  Moreover, although PRA cites a

5    handful of decisions which hold generally that indemnification of a party for its own

6    wrongdoing is disfavored, it fails to acknowledge that the Florida Supreme Court has made

7    clear that fault of an indemnified party is only relevant, if at all, where it is "active" fault,

8    of which there are no allegations here.  *Sanislo v. Give Kids the World, Inc.*, 157 So. 3d

9    256, 264-65 (Fla. 2015).

10        It is simply beyond dispute that each of Renn's claims is premised upon the sending

11   of unlawful, legally inaccurate and fraudulent demand letters by PRA.  With respect to

12   each allegedly wrongful act, the complaint consistently makes clear that it was "Palmer

13   Riefler, acting on behalf of Sephora," "Sephora through its agent, Palmer Riefler," or

14   "Palmer Riefler, as an agent for and on behalf of, Sephora" who undertook such actions.

15   Indeed, to the extent Sephora is addressed directly in the body of the complaint, it is to

16   emphasize that Sephora took ***no action*** in relation to the demand letters.[13]  Far from being

17   a situation in which Sephora seeks indemnity for its own wrongdoing, the Renn lawsuit is

18   a classic instance of attempting to hold a defendant vicariously liable based on the actions

19   of its agent – in this case a law firm retained to represent Sephora and to do so "in

20   accordance with all laws and regulations, including without limitation all laws relating to

21   the pursuit of, and collection for, theft claims."  The Renn Complaint squarely and

22   indisputably alleges that PRA carried out this representation in violation of and

23   inconsistent with applicable laws and regulations and seeks to hold Sephora, the client,

24   ────────────────

[13] *See, e.g., id* at ¶21 ("Plaintiff is further informed and believes, and on that basis alleges: (a) that Sephora

25   never discussed with Palmer Reifler, and never contemplated, filing suit against Plaintiff for any
     amount demanded in its demand letters, whether it is the $500 demanded in an initial demand letter,

26   the $775 demanded in a second demand letter, the $200 demanded in a third demand letter, or any
     other amount; (b) that Sephora never asked Palmer Reifler to evaluate the circumstances of

27   Plaintiff s, or any other class member's, detention to determine whether there was a good faith basis
     for any claim for civil shoplifting damages or the amount thereof; and (c) that in the four years

28   preceding the filing of this action, Sephora did not file an action against any California consumer to
     recover damages under Penal Code section 490.5.").

1   responsible for the actions of its attorneys.  The decisions cited by PRA which preclude

2   indemnity where parties are determined to be jointly liable for injury to a third party are

3   wholly inapposite and have no application here.  PRA's motion must be denied.

### E.  In the Event the Court Were At All Inclined to Grant PRA's Motion, Sephora Should be Permitted Leave to Amend

6           Unlike in most instances, in which a motion for judgment on the pleadings is

7   brought *after* the parties have engaged in substantial discovery and just prior to trial, here

8   PRA has chosen for reasons it has not explained to seek judgment on the pleadings before

9   the parties have engaged in any discovery at all.  Indeed, after representing to this Court

10  that it needed additional time to file a motion to dismiss,[14] it instead answered the

11  complaint and then filed the instant motion.  Perhaps PRA believes that if the Court were

12  to grant the instant motion, it would be less likely to grant leave to amend, however, the

13  standards for motions to dismiss under Rule 12(b)(6) and Rule 12(c) are the same.

14  *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir.1989); *Ideal Steel Supply*

15  *Corp. v. Anza* (2d Cir. 2011) 652 F.3d 310, 324 ("standards for dismissal pursuant to Rule

16  12(c) are the same as for a dismissal pursuant to Rule 12(b)(6)").  With respect to either

17  motion, leave to amend is freely granted and will be denied only if there is no set of facts

18  upon which the plaintiff could state a claim and amendment would be futile.  *McGlinchy v.*

19  *Shell Chemical Co.* 845 F. 2d 802, 810 (9th Cir. 1988); *Edwards v. City of Goldsboro*, 178

20  F.3d 231, 243 (4th Cir. 1999).

21          Here, of course, because of the timing of PRA's motion, the actual facts have not

22  yet been established.  However, if the Court were at all inclined to grant the instant motion,

23  Sephora requests leave to make an offer of proof and to amend.  The offer of proof would

24  show, among other things, that PRA did not deny its duty to defend or indemnify Sephora

25  until some 15 months after Sephora sent its demand -- and in fact encouraged Sephora to

26  send PRA its legal invoices in an effort to obtain coverage from PRA's insurance carrier.

---

[14] *See* Defendant's Motion For Additional Time To Plead, Docket #10, p. 4, lines 20-22 ("New defense counsel needs additional time well beyond February 8 to research various issues identified in our papers, and to prepare a proper motion to dismiss.").

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

*See* Sephora RJN, Exs. 1, 2.  It was only after PRA's carrier denied coverage that PRA suddenly made an about face, taking the position for the first time that it had no duty to reimburse Sephora.  *Ibid.*  These facts, and others to be elicited in discovery, squarely rebut the arguments PRA advances here and would be alleged in an amended complaint and proven at trial.

**IV.     CONCLUSION**

For all of the above reasons, PRA's motion for judgment on the pleadings must be denied.

Dated:   April 22, 2016                          BRYAN CAVE LLP


                                                 By: /s/ Daniel Rockey
                                                       Daniel Rockey
                                                 Attorneys for Plaintiff
                                                 SEPHORA USA, Inc.

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994