Daniel T. Rockey (California Bar No. 178604)
*daniel.rockey@bryancave.com*
Goli Mahdavi (California Bar No. 245705)
*goli.mahdavi@bryancave.com*
**BRYAN CAVE LLP**
560 Mission Street, 25th Floor
San Francisco, CA 94105-2994
Telephone: (415) 675-3400
Facsimile: (415) 675-3434

Attorneys for Plaintiff
SEPHORA USA, Inc.

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| SEPHORA USA, Inc., <br><br> Plaintiff, <br><br> v. <br><br> PALMER, REIFLER & ASSOCIATES, a Florida Corporation, <br><br> Defendant. | Case No.: 3:15-cv-05750-JCS <br><br> **DECLARATION OF DANIEL ROCKEY AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF SEPHORA USA, INC.'S OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS** |

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

I, Daniel Rockey, declare as follows:

1. I am a Partner in the law firm of Bryan, Cave, LLP, counsel for Plaintiff Sephora USA, Inc. ("Sephora") the above-captioned litigation. I make this declaration in support of Sephora's Opposition to Palmer, Reifler & Associates' motion for judgment on the pleadings, based on my own personal knowledge concerning the matters stated herein unless otherwise stated. I am willing and capable of testifying to these matters if called upon to do so.

2. Attached hereto as Exhibit 1 is a true and correct copy of a December 14, 2014 letter sent by Sephora's counsel at Bryan Cave, LLP to Natt O. Reifler of Palmer, Reifler & Associates.

3. Attached hereto as Exhibit 2 is a true and correct copy of a November 3, 2015 email from Natt Reifler to Sephora's General Counsel, Eric Baysinger, in which Mr. Riefler indicated that his firm would not reimburse Sephora for its costs of defense. Also included in the Exhibit 2 is a true and correct copy of a November 12, 2015 response from Mr. Baysinger.

4. Attached as Ex. 3 hereto is a true and correct copy of an Order Granting In Part And Denying In Part Defendants' Motion For Judgment On The Pleadings, issued by Mag. Judge Corley in *Lee v. The Pep Boys, Palmer, Reifler, et al.*, Case 3:12-cv-05064-JSC.

5. Attached as Ex. 4 hereto is a true and correct copy of an Order Granting In Part And Denying In Part Defendants' Motion To Dismiss, issued by Mag. Judge Corley in *Lee v. The Pep Boys, Palmer, Reifler, et al.*, Case 3:12-cv-05064-JSC.

6. Sephora requests that the Court take judicial notice of Exhibits 3 and 4 hereto pursuant to Federal Rule of Evidence 201. Pursuant to Rule 201, the court can judicially notice of "[o]fficial acts of the legislative, executive, and judicial departments of the United States," and "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." Because court filings are "capable of accurate and

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

ready determination by resort to sources whose accuracy cannot reasonably be questioned," pleadings filed and orders issued in related litigation are proper subjects of judicial notice under Rule 201. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir.2006) ("We may take judicial notice of court filings and other matters of public record"); *Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290 n. 1 (9th Cir.1996) (court may take judicial notice of the pleadings and court orders in earlier related proceedings); *Retired Employees Ass'n of Orange County, Inc. v. County of Orange*, 632 F.Supp.2d 983, 985 (C.D.Cal.2009) (taking judicial notice of a bankruptcy court order under Rule 201).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: April 22, 2016          By:   /s/ Daniel Rockey
                                      Daniel Rockey

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105-2994

# EXHIBIT 1



Adam Brezine
Direct: 415/268-1988
Fax: 415/675-3434
adam.brezine@bryancave.com

December 16, 2014

Bryan Cave LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105-2994
Tel (415) 675-3400
Fax (415) 675-3434
www.bryancave.com

## CONFIDENTIAL AND PRIVILEGED ATTORNEY-CLIENT COMMUNICATION

**By Email (nreifler@palmerreifler.com)**

Natt O. Reifler, Esq.
Palmer, Reifler & Associates, P.A.
1900 Summit Tower Blvd.
Ste. 600
Orlando, FL 32810

Bryan Cave Offices
Atlanta
Boulder
Charlotte
Chicago
Colorado Springs
Dallas
Denver
Frankfurt
Hamburg
Hong Kong
Irvine
Jefferson City
Kansas City
London
Los Angeles
Miami
New York
Paris
Phoenix
San Francisco
Shanghai
Singapore
St. Louis
Washington, DC

Re:     *Renn v. Sephora USA, Inc.*, Civil Case No. BC 551523;
        **Invoices Pursuant to Indemnification Obligation**

Dear Mr. Reifler:

This letter follows our July 25 letter setting forth Sephora's indemnification demand in the *Renn* matter. Sephora has not received any objection or written response to that demand. In early October, we sent to you invoices for this firm's services through Sep. 30, but I am informed that no payment has been received. Since that time, of course, additional costs and expenses have been incurred. All outstanding invoices – for time through Nov. 30 – are attached. The total amount due and owing is currently **$117,227.66.**

Please contact me by the close of business tomorrow – Wednesday, Dec. 17th – to make arrangements for payment before year end.

Very truly yours,

Adam Brezine

cc:     Eric Baysinger (by email only)

229156.1



## A Multinational Partnership, London

In Association With Bryan Cave LLP Atlanta | Boulder | Charlotte | Chicago | Colorado Springs | Dallas | Denver | Frankfurt
Hamburg | Hong Kong | Irvine | Jefferson City | Kansas City | London | Los Angeles | Miami | New York | Paris | Phoenix
San Francisco | Shanghai | Singapore | St. Louis | Washington, D.C. | www.bryancave.com

VAT REGISTRATION NO. GB 380 5011 84

PAGE 1

Date: September 24, 2014   PRIVILEGED ATTORNEY CLIENT COMMUNICATION
C355508 / 0372503

---

**Invoice No.**   10374856

## PRIVILEGED & CONFIDENTIAL

Sephora USA, Inc.
Eric Baysinger
General Counsel
525 Market Street, 11th Floor
San Francisco, CA  94105
USA

**RE:  Renn Litigation**

PERIOD COVERED: through     August 31, 2014

FOR PROFESSIONAL SERVICES RENDERED during the above period     $     24,793.00

DISBURSEMENTS

    Lexis Computerized Research                          $       1,123.60

        Total Disbursements                           $       1,123.60

        TOTAL CHARGES THIS INVOICE              $      25,916.60

**BRYAN CAVE**

**Bryan Cave has revised its policies related to client reimbursable expenses effective January 1, 2014. For more
information, please visit http://www.bryancave.com/reimbursableexpenses/.**

### INVOICE DUE UPON RECEIPT

PLEASE INCLUDE THE CLIENT, MATTER OR INVOICE NUMBER WITH ALL YOUR PAYMENTS (CHECK OR WIRE TRANSFER)
PLEASE RETURN REMITTANCE ADVICE WITH PAYMENT IN THE ENCLOSED ENVELOPE AND MAIL TO
BRYAN CAVE LLP, P.O. BOX 503089, ST. LOUIS, MO 63150-3089
OR WIRE TRANSFER FUNDS TO BANK OF AMERICA, N.A., ROUTING #0260-0959-3  ACCOUNT #100101007976
THANK YOU

Should you have any queries or concerns about any aspect of the service you have received, or about the bill, you are entitled
to raise these through the firm's complaints procedure, a copy of which is available on request.
You may also be entitled to apply to the court for an assessment of our bill under part III of the Solicitors Act 1974.
We also inform you that if all or part of the bill remains unpaid you may be charged interest.



## A Multinational Partnership, London

*In Association With* **Bryan Cave LLP** Atlanta | Boulder | Charlotte | Chicago | Colorado Springs | Dallas | Denver | Frankfurt
Hamburg | Hong Kong | Irvine | Jefferson City | Kansas City | London | Los Angeles | Miami | New York | Paris | Phoenix
San Francisco | Shanghai | Singapore | St. Louis | Washington, D.C. | **www.bryancave.com**

VAT REGISTRATION NO. GB 380 5011 84

Date: September 24, 2014    PRIVILEGED ATTORNEY CLIENT COMMUNICATION
C355508 / 0372503

| **TOTAL DUE THIS INVOICE** | **$ 25,916.60** |
|---|---|

Bryan Cave has revised its policies related to client reimbursable expenses effective January 1, 2014. For more information, please visit http://www.bryancave.com/reimbursableexpenses/.

### INVOICE DUE UPON RECEIPT

PLEASE INCLUDE THE CLIENT, MATTER OR INVOICE NUMBER WITH ALL YOUR PAYMENTS (CHECK OR WIRE TRANSFER)
PLEASE RETURN REMITTANCE ADVICE WITH PAYMENT IN THE ENCLOSED ENVELOPE AND MAIL TO
BRYAN CAVE LLP, P.O. BOX 503089, ST. LOUIS, MO 63150-3089
OR WIRE TRANSFER FUNDS TO BANK OF AMERICA, N.A., ROUTING #0260-0959-3 ACCOUNT #100101007976
THANK YOU

Should you have any queries or concerns about any aspect of the service you have received, or about the bill, you are entitled
to raise these through the firm's complaints procedure, a copy of which is available on request.
You may also be entitled to apply to the court for an assessment of our bill under part III of the Solicitors Act 1974.
We also inform you that if all or part of the bill remains unpaid you may be charged interest.



## A Multinational Partnership, London

*In Association With* Bryan Cave LLP Atlanta | Boulder | Charlotte | Chicago | Colorado Springs | Dallas | Denver | Frankfurt
Hamburg | Hong Kong | Irvine | Jefferson City | Kansas City | London | Los Angeles | Miami | New York | Paris | Phoenix
San Francisco | Shanghai | Singapore | St. Louis | Washington, D.C. | www.bryancave.com

VAT REGISTRATION NO. GB 380 5011 84

PAGE 1

Date: October 16, 2014 PRIVILEGED ATTORNEY CLIENT COMMUNICATION
C355508 / 0372503

**Invoice No.** 10382026

**PRIVILEGED & CONFIDENTIAL**

Sephora USA, Inc.
Eric Baysinger
General Counsel
525 Market Street, 11th Floor
San Francisco, CA 94105
USA

**RE:** Renn Litigation

PERIOD COVERED: through        September 30, 2014

FOR PROFESSIONAL SERVICES RENDERED during the above period        $        20,057.00

**DISBURSEMENTS**

| | | |
|---|---|---|
| Filing/Service Fee - First Legal Network, LLC | $ | 1,492.52 |
| Lexis Computerized Research | $ | 1,322.80 |
| Total Disbursements | $ | 2,815.32 |
| TOTAL CHARGES THIS INVOICE | $ | 22,872.32 |

**Bryan Cave has revised its policies related to client reimbursable expenses effective January 1, 2014. For more
information, please visit http://www.bryancave.com/reimbursableexpenses/.**

## INVOICE DUE UPON RECEIPT

PLEASE INCLUDE THE CLIENT, MATTER OR INVOICE NUMBER WITH ALL YOUR PAYMENTS (CHECK OR WIRE TRANSFER)
PLEASE RETURN REMITTANCE ADVICE WITH PAYMENT IN THE ENCLOSED ENVELOPE AND MAIL TO
BRYAN CAVE LLP, P.O. BOX 503089, ST. LOUIS, MO 63150-3089
OR WIRE TRANSFER FUNDS TO BANK OF AMERICA, N.A., ROUTING #0260-0959-3 ACCOUNT #100101007976
THANK YOU

Should you have any queries or concerns about any aspect of the service you have received, or about the bill, you are entitled
to raise these through the firm's complaints procedure, a copy of which is available on request.
You may also be entitled to apply to the court for an assessment of our bill under part III of the Solicitors Act 1974.
We also inform you that if all or part of the bill remains unpaid you may be charged interest.



## A Multinational Partnership, London

*In Association With* **Bryan Cave LLP** Atlanta | Boulder | Charlotte | Chicago | Colorado Springs | Dallas | Denver | Frankfurt
Hamburg | Hong Kong | Irvine | Jefferson City | Kansas City | London | Los Angeles | Miami | New York | Paris | Phoenix
San Francisco | Shanghai | Singapore | St. Louis | Washington, D.C. | **www.bryancave.com**

VAT REGISTRATION NO. GB 380 5011 84

Date: October 16, 2014     PRIVILEGED ATTORNEY CLIENT COMMUNICATION
C355508 / 0372503

---

**BRYAN CAVE**

### TOTAL DUE THIS INVOICE     $     22,872.32

**Bryan Cave has revised its policies related to client reimbursable expenses effective January 1, 2014. For more
information, please visit http://www.bryancave.com/reimbursableexpenses/.**

## INVOICE DUE UPON RECEIPT

PLEASE INCLUDE THE CLIENT, MATTER OR INVOICE NUMBER WITH ALL YOUR PAYMENTS (CHECK OR WIRE TRANSFER)
PLEASE RETURN REMITTANCE ADVICE WITH PAYMENT IN THE ENCLOSED ENVELOPE AND MAIL TO
BRYAN CAVE LLP, P.O. BOX 503089, ST. LOUIS, MO 63150-3089
OR WIRE TRANSFER FUNDS TO BANK OF AMERICA, N.A., ROUTING #0260-0959-3  ACCOUNT #100101007976
THANK YOU

Should you have any queries or concerns about any aspect of the service you have received, or about the bill, you are entitled
to raise these through the firm's complaints procedure, a copy of which is available on request.
You may also be entitled to apply to the court for an assessment of our bill under part III of the Solicitors Act 1974.
We also inform you that if all or part of the bill remains unpaid you may be charged interest.



## A Multinational Partnership, London

In Association With Bryan Cave LLP Atlanta | Boulder | Charlotte | Chicago | Colorado Springs | Dallas | Denver | Frankfurt Hamburg | Hong Kong | Irvine | Jefferson City | Kansas City | London | Los Angeles | Miami | New York | Paris | Phoenix San Francisco | Shanghai | Singapore | St. Louis | Washington, D.C. | www.bryancave.com

VAT REGISTRATION NO. GB 380 5011 84

Date:  November 25, 2014    PRIVILEGED ATTORNEY CLIENT COMMUNICATION
C355508 / 0372503

__Invoice No.__    10396579

## PRIVILEGED & CONFIDENTIAL

Sephora USA, Inc.
Eric Baysinger
General Counsel
525 Market Street, 11th Floor
San Francisco, CA  94105
USA

__RE:__  Renn Litigation

PERIOD COVERED: through      October 31, 2014

FOR PROFESSIONAL SERVICES RENDERED during the above period      $      38,276.00

__DISBURSEMENTS__

| | | |
|---|---|---|
| Sarah Samuelson travel expenses to attend status conference hearing | $ | 24.36 |
| Alameda Court research documents | $ | 65.50 |
| Total Disbursements | $ | 89.86 |

__Bryan Cave has revised its policies related to client reimbursable expenses effective January 1, 2014. For more information, please visit http://www.bryancave.com/reimbursableexpenses/.__

Bryan Cave is a cash basis partnership with a December 31st year-end. Consequently, receipt of your payment for this statement before year-end would be appreciated.

## INVOICE DUE UPON RECEIPT

PLEASE INCLUDE THE CLIENT, MATTER OR INVOICE NUMBER WITH ALL YOUR PAYMENTS (CHECK OR WIRE TRANSFER)
PLEASE RETURN REMITTANCE ADVICE WITH PAYMENT IN THE ENCLOSED ENVELOPE AND MAIL TO
BRYAN CAVE LLP, P.O. BOX 503089, ST. LOUIS, MO 63150-3089
OR WIRE TRANSFER FUNDS TO BANK OF AMERICA, N.A., ROUTING #0260-0959-3  ACCOUNT #100101007976
THANK YOU

Should you have any queries or concerns about any aspect of the service you have received, or about the bill, you are entitled
to raise these through the firm's complaints procedure, a copy of which is available on request.
You may also be entitled to apply to the court for an assessment of our bill under part III of the Solicitors Act 1974.
We also inform you that if all or part of the bill remains unpaid you may be charged interest



**A Multinational Partnership, London**

*In Association With* Bryan Cave LLP Atlanta | Boulder | Charlotte | Chicago | Colorado Springs | Dallas | Denver | Frankfurt
Hamburg | Hong Kong | Irvine | Jefferson City | Kansas City | London | Los Angeles | Miami | New York | Paris | Phoenix
San Francisco | Shanghai | Singapore | St. Louis | Washington, D.C. | **www.bryancave.com**

VAT REGISTRATION NO. GB 380 5011 84

Date:  November 25, 2014          PRIVILEGED ATTORNEY CLIENT COMMUNICATION
                                                      C355508 / 0372503

|  |  |  |  |
|---|---|---|---|
| TOTAL CHARGES THIS INVOICE | | $ | 38,365.86 |
| **BRYAN CAVE** | | | |
| **TOTAL DUE THIS INVOICE** | | **$** | **38,365.86** |

**Bryan Cave has revised its policies related to client reimbursable expenses effective January 1, 2014. For more information, please visit http://www.bryancave.com/reimbursableexpenses/.**

Bryan Cave is a cash basis partnership with a December 31st year-end. Consequently, receipt of your payment for this statement before year-end would be appreciated.

### INVOICE DUE UPON RECEIPT

PLEASE INCLUDE THE CLIENT, MATTER OR INVOICE NUMBER WITH ALL YOUR PAYMENTS (CHECK OR WIRE TRANSFER)
PLEASE RETURN REMITTANCE ADVICE WITH PAYMENT IN THE ENCLOSED ENVELOPE AND MAIL TO
BRYAN CAVE LLP, P.O. BOX 503089, ST. LOUIS, MO 63150-3089
OR WIRE TRANSFER FUNDS TO BANK OF AMERICA, N.A., ROUTING #0260-0959-3  ACCOUNT #100101007976
THANK YOU

Should you have any queries or concerns about any aspect of the service you have received, or about the bill, you are entitled
to raise these through the firm's complaints procedure, a copy of which is available on request.
You may also be entitled to apply to the court for an assessment of our bill under part III of the Solicitors Act 1974.
We also inform you that if all or part of the bill remains unpaid you may be charged interest



## A Multinational Partnership, London

In Association With Bryan Cave LLP  Atlanta | Boulder | Charlotte | Chicago | Colorado Springs | Dallas | Denver | Frankfurt
Hamburg | Hong Kong | Irvine | Jefferson City | Kansas City | London | Los Angeles | Miami | New York | Paris | Phoenix
San Francisco | Shanghai | Singapore | St. Louis | Washington, D.C. | www.bryancave.com

VAT REGISTRATION NO. GB 380 5011 84

PAGE  1

Date:  December 8, 2014        PRIVILEGED ATTORNEY CLIENT COMMUNICATION
C355508 / 0372503

**Invoice No.**   10400088

**PRIVILEGED & CONFIDENTIAL**

Attn. Eric Baysinger
General Counsel
Sephora USA, Inc.
525 Market Street, 11th Floor
San Francisco, CA 94105
USA

**RE:  Renn Litigation**

PERIOD COVERED: through      November 30, 2014

FOR PROFESSIONAL SERVICES RENDERED during the above period      $      29,610.00

**DISBURSEMENTS**

| | | |
|---|---|---|
| Alameda Court - Research documents | $ | 148.50 |
| Repository licensing fee | $ | 35.00 |
| First Legal Network - Filing fees | $ | 279.38 |
| Total Disbursements | $ | 462.88 |

TOTAL CHARGES THIS INVOICE      $      30,072.88

Bryan Cave has revised its policies related to client reimbursable expenses effective January 1, 2014.  For more information,
please visit http://www.bryancave.com/reimbursableexpenses/.

Bryan Cave is a cash basis partnership with a December 31st year-end. Consequently, receipt of your payment for this statement
before year-end would be appreciated.

### INVOICE DUE UPON RECEIPT

PLEASE INCLUDE THE CLIENT, MATTER OR INVOICE NUMBER WITH ALL YOUR PAYMENTS (CHECK OR WIRE TRANSFER)
PLEASE RETURN REMITTANCE ADVICE WITH PAYMENT IN THE ENCLOSED ENVELOPE AND MAIL TO
BRYAN CAVE LLP, P.O. BOX 503089, ST. LOUIS, MO 63150-3089
OR WIRE TRANSFER FUNDS TO BANK OF AMERICA, N.A., ROUTING #0260-0959-3  ACCOUNT #100101007976
THANK YOU

Should you have any queries or concerns about any aspect of the service you have received, or about the bill, you are entitled to raise
these through the firm's complaints procedure, a copy of which is available on request.
You may also be entitled to apply to the court for an assessment of our bill under part III of the Solicitors Act 1974.
We also inform you that if all or part of the bill remains unpaid you may be charged interest



**A Multinational Partnership, London**

*In Association With* Bryan Cave LLP  Atlanta | Boulder | Charlotte | Chicago | Colorado Springs | Dallas | Denver | Frankfurt Hamburg | Hong Kong | Irvine | Jefferson City | Kansas City | London | Los Angeles | Miami | New York | Paris | Phoenix San Francisco | Shanghai | Singapore | St. Louis | Washington, D.C. | www.bryancave.com

VAT REGISTRATION NO. GB 380 5011 84

Date:   December 8, 2014    PRIVILEGED ATTORNEY CLIENT COMMUNICATION
C355508 / 0372503

**BRYAN CAVE**

### TOTAL DUE THIS INVOICE           $     30,072.88

Bryan Cave has revised its policies related to client reimbursable expenses effective January 1, 2014.  For more information, please visit http://www.bryancave.com/reimbursableexpenses/.

Bryan Cave is a cash basis partnership with a December 31st year-end. Consequently, receipt of your payment for this statement before year-end would be appreciated.

### INVOICE DUE UPON RECEIPT

PLEASE INCLUDE THE CLIENT, MATTER OR INVOICE NUMBER WITH ALL YOUR PAYMENTS (CHECK OR WIRE TRANSFER)
PLEASE RETURN REMITTANCE ADVICE WITH PAYMENT IN THE ENCLOSED ENVELOPE AND MAIL TO
BRYAN CAVE LLP, P.O. BOX 503089, ST. LOUIS, MO 63150-3089
OR WIRE TRANSFER FUNDS TO BANK OF AMERICA, N.A., ROUTING #0260-0959-3  ACCOUNT #100101007976
THANK YOU

Should you have any queries or concerns about any aspect of the service you have received, or about the bill, you are entitled to raise these through the firm's complaints procedure, a copy of which is available on request.
You may also be entitled to apply to the court for an assessment of our bill under part III of the Solicitors Act 1974.
We also inform you that if all or part of the bill remains unpaid you may be charged interest

# EXHIBIT 2

| | |
|---|---|
| **Subject:** | FW: Renn v. Sephora USA, Inc. |

---

**From:** Baysinger, Eric [mailto:Eric.Baysinger@sephora.com]
**Sent:** Thursday, November 12, 2015 3:16 PM
**To:** Brezine, Adam; Osborne, Carol
**Subject:** FW: Renn v. Sephora USA, Inc.

FYI

**From:** Baysinger, Eric
**Sent:** Thursday, November 12, 2015 3:15 PM
**To:** 'Natt Reifler' <nreifler@palmerreifler.com>
**Cc:** James Welborn <jwelborn@palmerreifler.com>
**Subject:** RE: Renn v. Sephora USA, Inc.

Natt:

My apologies for the delayed response in getting back to you; I was out of the country on business last week. Your email is disappointing, especially when you take into account the long relationship Sephora has had with your firm and how much your firm has benefitted from the relationship. The parties' agreement plainly states that that PRA must "defend...suits" arising out of its conduct. The obligation is not limited to paying judgments, and this case was entirely centered on the conduct of PRA. Your suggested interpretation would lead to absurd incentives and results, which is clearly not what the parties (nor public policy) intended. We note that your argument comes (for the first time) over 15 months after we initially made demand on PRA, and apparently after your insurance carrier's refusal to pay the claim. While we understand you would prefer your insurance carrier to cover this cost, that is not Sephora's concern, nor does it bear on the proper interpretation of the parties' contract.

We are not willing to resolve this matter by renegotiating the parties' agreement going forward. In the event PRA does not change course and agree to reimburse Sephora for the legal defense, we will have no choice but to pay the fees and costs incurred and file a claim against your firm for reimbursement under the contract. If I do not hear back from you by the end of business on **Tuesday, November 17**, Sephora will assume PRA will not be paying the fees and costs in question and Sephora will immediately pay such fees and costs. In the event that happens, please let me know if you are authorized to accept service of the complaint that will be filed shortly thereafter.

I do hope to hear from you before the close of business next Tuesday.

Regards,
Eric

Eric J. Baysinger
Vice President, General Counsel
Sephora USA, Inc.
525 Market Street, 11th Floor
San Francisco, CA 94105

Direct: (415) 284-3397

1

Fax: (415) 284-3425
e-mail: eric.baysinger@sephora.com

---

**From:** Natt Reifler [mailto:nreifler@palmerreifler.com]
**Sent:** Tuesday, November 03, 2015 4:41 PM
**To:** Baysinger, Eric <Eric.Baysinger@sephora.com>
**Cc:** James Welborn <jwelborn@palmerreifler.com>
**Subject:** RE: Renn v. Sephora USA, Inc.

Eric,

We have had discussions regarding this request and do not agree that there is a legal duty to reimburse Sephora for its legal defense when Sephora prevailed in its defense and the claim was won. There was no wrongdoing shown and our indemnification provision only applies when there is negligence or other improper conduct.

We made a request to our carrier but it refused to offer any payment toward this request.

We are willing to offer a reduced contingency on business moving forward in an effort to amicably address this issue. If this is of interest, please let me know.

Natt O. Reifler
Law Offices of Palmer, Reifler & Associates, P.A.
1900 Summit Tower Blvd. Ste. 600
Orlando, FL 32810
☎: 407-875-3400 Ext. 124 | f: 407-875-0739
✆: nreifler@palmerreifler.com



LAW OFFICES OF
**Palmer | Reifler**
AND ASSOCIATES, P.A.

🖐 Please consider the environment before printing this e-mail.

"CONFIDENTIALITY NOTICE: This e-mail, and any attachments hereto, is intended only for use by the intended recipient(s) and may contain information privileged by an attorney-client privilege or protected by a work-product doctrine. If you are not an intended recipient of this e-mail, you are hereby notified that any dissemination, distribution (other than a reply to this sender) or copying of this e-mail, and any attachments hereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me by calling (407) 875-3400 ext. 124 or by replying with a ""wrong recipient"" message and then permanently delete the original and any copy of this e-mail and any printout thereof. Thank you."

---

**From:** Baysinger, Eric [mailto:Eric.Baysinger@sephora.com]
**Sent:** Tuesday, November 03, 2015 7:15 PM
**To:** Natt Reifler
**Subject:** FW: Renn v. Sephora USA, Inc.

Natt:

Can you please reply with an update on this issue? We're running out of time to get Bryan Cave paid before their fiscal year end, which absolutely has to happen.

Thank you,
Eric

**From:** Baysinger, Eric
**Sent:** Wednesday, October 28, 2015 3:43 PM
**To:** 'Natt Reifler' <nreifler@palmerreifler.com>
**Subject:** FW: Renn v. Sephora USA, Inc.

Natt:

It's been about a month since we spoke about the outstanding amounts due Bryan Cave. I've not heard from you or James since our call so I was following up to see if you had an update for me.

Eric


**From:** Baysinger, Eric
**Sent:** Friday, September 25, 2015 3:35 PM
**To:** 'Natt Reifler' <nreifler@palmerreifler.com>
**Cc:** James Welborn <jwelborn@palmerreifler.com>
**Subject:** RE: Renn v. Sephora USA, Inc.

Natt:

Thanks for getting back to me. I have a lunch meeting on Monday and should be back in my office by 2:00 pm Pacific / 5:00 pm Eastern. Will that work for you or is it too late?

Thanks,
Eric


**From:** Natt Reifler [mailto:nreifler@palmerreifler.com]
**Sent:** Friday, September 25, 2015 1:21 PM
**To:** Baysinger, Eric <Eric.Baysinger@sephora.com>
**Cc:** James Welborn <jwelborn@palmerreifler.com>
**Subject:** Re: Renn v. Sephora USA, Inc.

Eric,

I can speak with you on Monday. I have a 2:30 pm meeting in our offices that will last about an hour.

I stay late so we could speak after 1:00 pm Pacific Time. Would that work for you?

Natt Reifler


On Sep 25, 2015, at 2:17 PM, "Baysinger, Eric" <Eric.Baysinger@sephora.com> wrote:

> Natt:
>
> I need to speak with you or Mr. Welborn regarding the outstanding legal fees dues the Bryan Cave law firm for their work in the Renn litigation. Would you be available to talk on Monday?

3

Regards,
Eric


Eric J. Baysinger
Vice President, General Counsel
Sephora USA, Inc.
425 Market Street, 19th Floor
San Francisco, CA 94105

Direct: (415) 284-3397
Fax: (415) 284-3425
e-mail: eric.baysinger@sephora.com

**From:** Natt Reifler [mailto:nreifler@palmerreifler.com]
**Sent:** Tuesday, July 29, 2014 3:04 PM
**To:** Baysinger, Eric <Eric.Baysinger@sephora.com>
**Cc:** 'Brezine, Adam' <Adam.Brezine@bryancave.com>; James Welborn <jwelborn@palmerreifler.com>
**Subject:** RE: Renn v. Sephora USA, Inc.

Hello Eric.

Thanks for your message under these unfortunate circumstances. I will be back in touch with you upon your return from vacation. We are upset that this frivolous claim was filed against Sephora and will work with Adam Brezine and the Bryan Cave firm in attempting to get the matter dismissed/satisfactorily disposed. I just spoke with him and feel we can be of assistance in the defense of this claim.

We look forward to working with you in this regard.

Natt O. Reifler
Law Offices of Palmer, Reifler & Associates, P.A.
1900 Summit Tower Blvd. Ste. 600
Orlando, FL 32810
☎: 407-875-3400 Ext. 124 | f: 407-875-0739
✆: nreifler@palmerreifler.com

<image001.jpg>

🖶 Please consider the environment before printing this e-mail.
"CONFIDENTIALITY NOTICE: This e-mail, and any attachments hereto, is intended only for use by the intended recipient(s) and may contain information privileged by an attorney-client privilege or protected by a work-product doctrine. If you are not an intended recipient of this e-mail, you are hereby notified that any dissemination, distribution (other than a reply to this sender) or copying of this e-mail, and any attachments hereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me by calling (407) 875-3400 ext. 124 or by replying with a ""wrong recipient"" message and then permanently delete the original and any copy of this e-mail and any printout thereof. Thank you."

**From:** Baysinger, Eric [mailto:Eric.Baysinger@sephora.com]
**Sent:** Thursday, July 24, 2014 8:19 PM
**To:** Natt Reifler
**Cc:** Brezine, Adam
**Subject:** Renn v. Sephora USA, Inc.

Mr. Reifler:

My name is Eric Baysinger and I am the General Counsel for Sephora USA, Inc. ("Sephora"). As you may be aware, Sephora and Palmer, Reifler & Associates ("PRA") are parties to an Attorney/Client Services Agreement executed in 2005 (the "Agreement"). Just this past week it came to my attention that a putative class action complaint was filed in Los Angeles Superior Court by Tamera Renn, the mother of a minor daughter who was detained for shoplifting at a Sephora store in Glendale, California. A copy of the complaint is attached to this email.

Sephora was served with the complaint on July 21st. A quick review of the complaint shows the claims contained therein allegedly arise directly from the services provided to Sephora by PRA under the Agreement. As such, you will shortly be receiving from Sephora a formal demand for defense and indemnity. I just wanted to email you in advance so that you were not taken by surprise by our letter.

I will be heading out on vacation tomorrow and will not return until August 4th. If you would like to talk about this matter before I return please feel free to contact Adam Brezine, Sephora's outside litigation counsel. Adam is copied on this email so that you have his email address.

Thank you for your attention to this matter. I look forward to speaking with you when I return next month.

Regards,
Eric


Eric J. Baysinger
Vice President, General Counsel
Sephora USA, Inc.
525 Market Street, 11th Floor
San Francisco, CA 94105

Direct: (415) 284-3397
Fax: (415) 284-3425
e-mail: eric.baysinger@sephora.com

Confidentiality Notice: The contents of this email, all related responses and any files and/or attachments transmitted with it are CONFIDENTIAL and are intended solely for the use of the individual or entity to whom they are addressed. This email may contain legally privileged information and may not be disclosed, copied or distributed to anyone without authorization from the email's originator. It is strictly prohibited for unaddressed individuals or entities to take any action based on upon information contained in this email. If you have received this email in error, please notify the sender immediately and delete all copies from your system.

Confidentiality Notice: The contents of this email, all related responses and any files and/or attachments transmitted with it are CONFIDENTIAL and are intended solely for the use of the individual or entity to whom they are addressed. This email may contain legally privileged information and may not be disclosed, copied or distributed to anyone without authorization from the email's originator. It is strictly prohibited for unaddressed individuals or entities to take any action based on upon information contained in this email. If you have received this email in

error, please notify the sender immediately and delete all copies from your system.

Confidentiality Notice: The contents of this email, all related responses and any files and/or attachments transmitted with it are CONFIDENTIAL and are intended solely for the use of the individual or entity to whom they are addressed. This email may contain legally privileged information and may not be disclosed, copied or distributed to anyone without authorization from the email's originator. It is strictly prohibited for unaddressed individuals or entities to take any action based on upon information contained in this email. If you have received this email in error, please notify the sender immediately and delete all copies from your system.

Confidentiality Notice: The contents of this email, all related responses and any files and/or attachments transmitted with it are CONFIDENTIAL and are intended solely for the use of the individual or entity to whom they are addressed. This email may contain legally privileged information and may not be disclosed, copied or distributed to anyone without authorization from the email's originator. It is strictly prohibited for unaddressed individuals or entities to take any action based on upon information contained in this email. If you have received this email in error, please notify the sender immediately and delete all copies from your system.

**EXHIBIT 3**

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13

14

15

16

17

18

ANDREW LEE,

          Plaintiff,

    v.

THE PEP BOYS MANNY MOE AND
JACK OF CALIFORNIA, et al.,

          Defendants.

Case No.: C-12-05064 JSC

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION FOR JUDGMENT ON THE
PLEADINGS**

19

20

21

22

23

24

25

26

27

28

      This Fair Debt Collection Practices Act ("FDCPA") and California Unfair Competition Law ("UCL") lawsuit arises out of an employee's alleged misuse of his employee discount and for changing the oil on his car while at work.  Plaintiff Andrew Lee initiated this action in Alameda County Superior Court against Defendants The Pep Boys Manny Moe and Jack of California ("Pep Boys"), Palmer, Reifler & Associates ("Palmer"), and Patricia Hastings ("Hastings") and Defendants subsequently removed the action to federal court.  Now pending before the Court is Defendants' motion for judgment on the pleadings as to Plaintiff's non-FDCPA UCL allegations.  (Dkt. No. 69.) Having carefully reviewed the parties' submissions, the Court concludes that oral argument is

1   unnecessary, VACATES the January 16, 2014 hearing, and GRANTS the motion in part and

2   DENIES the motion in part.

## BACKGROUND

4       The Court summarized the factual allegations of the First Amended Complaint ("FAC")

5   (Dkt. No. 5-4) in detail in its December 7, 2012 Order (Dkt. No. 23) which it incorporates by

6   reference.  In short, at some point during his employment with Pep Boys, Plaintiff was accused of

7   performing an oil change on his own car while at work that he did not pay for and using his

8   employee discount to complete customer transactions on behalf of family members and friends.

9   Following his termination, Plaintiff received two letters purporting to be from Pep Boys' attorney.

10   The first letter, dated May 23, 2012, demands $350 within 20 days, and the second letter, dated June

11   12, 2012, demands $625 within 10 days.  (*See* Dkt. No. 13.)  The June 12 letter, which is

12   substantially similar to the May 23 letter, states in relevant part:

13       This Law Firm represents Pep Boys concerning its civil claim against you in
    connection with an incident in their store 607 on 4/17/2012.  You have failed to make

14       full payment after written demand to do so.

15

16       Pursuant to the Cal. Penal Code§ 490.5 "Theft of retail merchandise; civil liability",
    Pep Boys may consider moving forward with a statutory civil damages claim against

17       you.

18       **At this time, our client is requesting that you settle this matter by making**

19       **payment to us in the amount of $625.00 within ten (10) days of the date of this**
    **letter.** . . . Upon receipt of your full payment, you will receive a written release of the

20       statutory civil "penalty" claim.

21       . . .

22

23       Should payment fail to be made on time or payment arrangements not be set up within
    the above stated time period, we may review the matter for the possibility of

24       recommending that our client take further civil action and depending on the state law,
    may choose to make a higher settlement request on behalf of our client.  Pep Boys may

25       in the future consider filing a lawsuit, in which case it will likely seek any available
    attorney's fees, court costs and other legal expenses throughout such litigation.  Any

26       defending party to such a lawsuit would likely be served by a process server with a
    summons requiring the party or the party's attorney to respond and/or appear in court

27       to defend the action.  If successful in any such litigation, we estimate that Pep Boys

28       would be seeking a final judgment of damages, attorney's fees and court costs up to

United States District Court
Northern District of California

the maximum amounts allowed by law which could therefore, [sic] exceed the amount demanded above.

We strongly encourage you to make payment or set up payment arrangements within the time period requested above to avoid further civil requests.

(Dkt. No. 13 at 6.)

In its previous Order partially dismissing the FAC, the Court denied Defendants' motion to dismiss the FDCPA claim, concluding that the alleged transactions were not nonconsensual as a matter of law. In addition to dismissing the UCL claim with leave to amend for lack of standing, the Court also ruled that particular allegations in the FAC regarding Pep Boys' initial receipt of $20 in restitution were insufficient to state a claim under both the UCL's "unfair" and "fraudulent" prongs. Plaintiff subsequently filed a Second Amended Complaint ("SAC").

## LEGAL STANDARD

"After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard of review is "functionally identical" to the Rule 12(b)(6) standard. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). Accepting all allegations of the non-moving party as true, judgment "is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "Dismissal [of claims] can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). In deciding a Rule 12(c) motion, the court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Generally, when a complaint is dismissed, "leave to amend shall be freely given when justice so requires." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010); *see* Fed. R. Civ. P. 15(a). The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.

United States District Court
Northern District of California

1   2000) (citations and internal quotation marks omitted).  This is especially true where the plaintiff is

2   proceeding pro se.  *See id.* at 1131.  However, the court's "discretion to deny leave to amend is

3   particularly broad where plaintiff has previously amended the complaint."  *Cafasso,* 637 F.3d at 1058

4   (internal citations and quotation marks omitted).

## DISCUSSION

6          Defendants' motion seeks judgment on Plaintiff's UCL claim to the extent that claim does

7   not depend upon an alleged violation of the FDCPA.[1]  Following a Court-ordered phone call

8   between the parties, Plaintiff identified Paragraph 34, subsections (a) and (b), of the SAC as the

9   allegations supporting his "standalone" UCL claim.  Those subsections provide:

> DEFENDANTS, and each of them, have engaged and continue to engage in unfair and
> unlawful business practices in California in violation of the UCL by practicing,
> employing and utilizing the debt collection practices outlined above, include, to wit,
> by: (a) seeking charges from alleged debtors, including PLAINTIFF, in excess of
> those expressly permitted by California statute, including without limitation,
> California Penal Code § 490.5(b); (b) accusing alleged debtors, including PLAINTIFF,
> of violating California Penal Code § 490.5, without determining whether § 490.5
> applied to these alleged debtors in the first place; . . . .

16  (Dkt. No. 25 ¶ 34.)  Regarding subsection (b), Plaintiff asserted in the phone call that "whether §

17  490.5 applied to these alleged debtors in the first place" means "whether the debtors have been

18  convicted of the actual alleged theft."  (Dkt. No. 70-1 at 5:25-6:4.)[2]

19         The UCL broadly prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal.

20  Bus. & Prof. Code §§ 17200 et seq.  By proscribing any "unlawful" business practice, the UCL

21  "borrows violations" of other state and federal laws and makes them independently actionable.  *Cel-*

22  *Tech Comm'n, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 180 (1999).  A practice may "be

---

[1]  Because Defendants' motion does not distinguish between defendants, the Court assumes for purposes of this motion that Defendants' liability is coextensive.

[2]  The Court rejects Plaintiff's contention, stated in a footnote, that Defendants' motion is procedurally improper because "Defendants could have raised the arguments in connection with their motion to dismiss." (Dkt. No. 75 at 1 n.1.)  Plaintiff cites no authority in support of his contention.  In fact, it is not uncommon for a Rule 12(c) motion to follow a Rule 12(b)(6) motion. *See, e.g., Chimara v. Contra Costa Cnty Gov't,* 2013 WL 1899801, at *1 (N.D. Cal. May 7, 2013).  Nor is this a motion for reconsideration in disguise since no issue in the pending motion was even presented to the Court on Defendants' earlier motion to dismiss.

4

1  deemed unfair or deceptive" under the UCL "even if it is not unlawful." *Id.* An unfair business

2  practice is "one that either offends an established public policy or is immoral, unethical, oppressive,

3  unscrupulous, or substantially injurious to consumers." *McDonald v. Coldwell Banker*, 543 F.3d

4  498, 506 (9th Cir. 2008) (internal quotation marks omitted). Whether a business practice is unfair

5  "involves an examination of that practice's impact on its alleged victim, balanced against the

6  reasons, justifications and motives of the alleged wrongdoer." *Family Home & Fin. Ctr., Inc. v. Fed.*

7  *Home Loan Mortg. Corp.*, 525 F.3d 822, 826 (9th Cir. 2008). "An employer's business practices

8  concerning its employees" are within the scope of the prohibition against unfair competition.

9  *Wilkinson v. Times Mirror Corp.*, 215 Cal. App. 3d 1034, 1052 (1989). "What constitutes 'unfair

10  competition' or 'unfair or fraudulent business practice' under any given set of circumstances is a

11  question of fact . . . ." *People v. McKale*, 25 Cal. 3d 626, 635 (1979).[3]

12  **A.      Unfair Act or Practice**

13  The parties dispute whether the June 12 letter violated the unfair prong of the UCL by

14  seeking $625, which exceeds the $500 a merchant may recover under California Penal Code Section

15  490.5.[4] That section provides in relevant part:

16    When an adult or emancipated minor has unlawfully taken merchandise from a
      merchant's premises, or a book or other library materials from a library facility, the
17    adult or emancipated minor shall be liable to the merchant or library facility for
      damages of not less than fifty dollars ($50) nor more than five hundred dollars ($500),
18    plus costs. In addition to the foregoing damages, the adult or emancipated minor shall
19    be liable to the merchant for the retail value of the merchandise if it is not recovered in
      merchantable condition, or to a library facility for the fair market value of its book or
20    other library materials. An action for recovery of damages, pursuant to this
      subdivision, may be brought in small claims court if the total damages do not exceed
21    the jurisdictional limit of such court, or in any other appropriate court. The provisions
22    of this subdivision are in addition to other civil remedies and do not limit merchants or
      other persons to elect to pursue other civil remedies.

23

24

25

26

27  _____

[3] The third UCL prong—fraudulent conduct—is not alleged in the SAC.

28  [4] The parties do not dispute that the May 23 letter, which sought only $350, did not violate the UCL by seeking more than the $500 afforded in Section 490.5. Thus, Defendants' motion is GRANTED with respect to whether the May 23 letter violated the UCL by seeking more than $500.

1    Cal. Pen. Code § 490.5(c).[5]  Thus, pursuant to Section 490.5, an adult, such as Plaintiff, who

2    "unlawfully" takes merchandise from a merchant is liable to the merchant for no more than $500,

3    though the merchant can seek remedies in addition to Section 490.5.

4         Because the June 12 letter can reasonably be interpreted as seeking $625 pursuant to Section

5    490.5, Defendants' motion must be denied.  As quoted above, the June 12 letter provides:

6         Pursuant to the Cal. Penal Code§ 490.5 "Theft of retail merchandise; civil liability",
     Pep Boys may consider moving forward with a statutory civil damages claim against
7    you.

8    **At this time, our client is requesting that you settle this matter by making
9    payment to us in the amount of $625.00 within ten (10) days of the date of this
     letter.** . . . Upon receipt of your full payment, you will receive a written release of the
10   statutory civil "penalty" claim.

11   (Dkt. No. 13 at 6.)  The letter informs Plaintiff that Pep Boys "may consider" bringing a civil

12   damages "claim" against him, pursuant to Section 490.5.  The letter then identifies the settlement

13   demand ($625) and states that, upon full payment, the claim—that is the civil penalty claim—will be

14   released.  The letter can plausibly be read to demand payment of $625 to satisfy only Pep Boys'

15   claim "pursuant to [Section] 490.5," even though Pep Boys would be able to seek only up to $500

16   pursuant to that statute.  The Court cannot say this practice is not "unfair" as a matter of law.

17        Defendants' arguments to the contrary rely on a different interpretation of the letter.

18   Defendants contend that they could lawfully seek damages in excess of $500 because Section 490.5

19   allows the merchant to seek additional remedies.  Defendants further assert that the letter explicitly

20   states that Defendants are not limited to pursing a Section 490.5 claim.  (*See* Dkt. No. 13 at 6

21   ("Should payment fail to be made on time or payment arrangements not be set up within the above

22   stated time period, we may review the matter for the possibility of recommending that our client take

23   further civil action and depending on the state law, may choose to make a higher settlement request

24

25   [5]  Defendants argue that Plaintiff's claim is limited solely to subsection (b), which imposes liability on
     the parent or legal guardian of a minor who committed petty theft.  Defendants are incorrect.  The
26   SAC plainly alleges that Defendants sought "charges from alleged debtors, including PLAINTIFF, in
     excess of those expressly permitted by California statute, including *without limitation*, California
27   Penal Code § 490.5(b)."  (Dkt. No. 25 ¶ 34.)  Given this allegation, and the obvious fact that
     subsection (c), not subsection (b), applies to this case, Defendants were on notice of the basis for
28   Plaintiff's claim.

1   on behalf of our client.")  The issue, however, is not whether Defendants could seek additional

2   remedies beyond the $500 afforded in Section 490.5; rather, the issue is whether Defendants sought

3   more than the $500 afforded in Section 490.5 in the first instance, before invoking its right to

4   additional remedies.  The letter's representation that the recipient will receive a release of the

5   statutory civil penalty claim upon payment of the $625 sought supports a reasonable inference that

6   Defendants were seeking $625 solely under the statutory penalty claim; Defendants were not

7   offering to release any of the other remedies in exchange for the payment.  Because this is one

8   plausible interpretation of the letter, Defendants' other, possibly plausible interpretation is not

9   dispositive. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative

10  explanations, one advanced by defendant and the other advanced by plaintiff, both of which are

11  plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6).  Plaintiff's

12  complaint may be dismissed only when defendant's plausible alternative explanation is so

13  convincing that plaintiff's explanation is *im*plausible.").

14       Plaintiff also argues that the letter is "unfair" because it demanded money under Section

15  490.5 when Plaintiff was neither convicted nor charged with any crime.  Because a charge or

16  conviction for theft is not a prerequisite to recovery under Section 490.5, the letter is not "unfair"

17  under this theory.  As noted above, Section 490.5(c) allows a merchant to commence a civil action

18  against a person who has "unlawfully" taken merchandise from the merchant's premises.  Cal. Pen.

19  Code § 490.5(c).  The plain language of the statute does not condition commencement of the civil

20  action on a criminal charge or conviction.  Further, the California Attorney General has opined that

21  "[t]he disposition of a criminal court action is not a prerequisite for the recovery of damages in a

22  civil action filed under Penal Code section 490.5."  69 Op. Cal. Att'y Gen. 271, at *1 (1986).

23  Defendants' motion is accordingly granted on this basis without leave to amend.

24       Plaintiff's only purported authority to the contrary is the California Court of Appeals'

25  unpublished opinion in *Mers v. Fry's Elecs., Inc.*, 2002 WL 31820968 (Cal. Ct. App. Dec. 17,

26  2002).[6]  The Court fails to see how *Mers* supports Plaintiff's argument in any way; in fact, the

27
───────────────────────
28  [6]  Contrary to Defendants' assertion, this Court may consider an unpublished decision of the
    California Court of Appeals for its "persuasive reasoning," though it is not decisional law. *See Cole
    v. Doe 1 thru 2 Officers of City of Emeryville Police Dept.*, 387 F. Supp. 2d 1084, 1103 n.7 (N.D. Cal.

1   opinion indicates that Plaintiff's position is untenable.  The *Mers* court rejected as a "red herring"

2   Fry's argument that "allowing the judgment to stand will establish a rule that a merchant cannot send

3   a demand letter to an individual until he is convicted for shoplifting," and cited the California

4   Attorney General opinion quoted above, concluding: "So the bottom line is this case does not

5   prevent Fry's, or any other merchant, from making a demand for damages under Penal Code section

6   490.5, so long as it does not threaten unintended litigation simply for the shock value, as an easy

7   way to collect money."  2002 WL 31820968, at *8 n.6.  *Mers* does not stand for the proposition that

8   making a demand pursuant to Section 490.5 requires a criminal charge or conviction.

9   **B.      Unlawful Act or Practice**

10          Defendants further assert that Plaintiff's UCL claim fails to the extent Plaintiff alleges that

11   Defendants' conduct was "unlawful" because it violated Section 490.5.  The Court agrees.  While

12   Plaintiff states a claim as to the unfairness of Defendants demanding more than the $500 allowed

13   under the Penal Code, Defendants' demand did not violate the statute.  Nothing in Section 490.5

14   makes it a violation of the law to demand more than the $500 afforded in the law.  In other words,

15   while Defendants are not entitled to such an amount, the demand itself is not unlawful.  Plaintiff

16   must rely on some other law, such as the FDCPA, that makes such conduct unlawful.

17          Plaintiff's reliance on *Irwin v. Mascott*, 112 F. Supp. 2d 937 (N.D. Cal. 2000) is inapposite.

18   The *Irwin* court held that the defendant violated certain provisions of the FDCPA by seeking more in

19   damages from writers of bounced checks than allowed by the relevant California statute.  112 F.

20   Supp. 2d at 947.  The court further held that the FDCPA violation also constituted a UCL violation.

21   *Id.* at 955 ("This court finds that the deceptive practices described above, which violate the FDCPA,

22   also violate the [UCL].")  As noted above, the UCL claim at issue on this motion is the "standalone"

23   UCL claim that does not rely on a violation of the FDCPA.  *Irwin* did not consider such a standalone

24   UCL claim, and thus did not hold that seeking more than allowed under a statute imposing money

25   damages is, by itself, unlawful.

26

27

28   2005); *see also Jerry Beeman & Pharmacy Servs., Inc. v. Anthem Prescription Mgmt., LLC*, 652 F.3d
    1085, 1093 (9th Cir. 2011) ("[W]e are not precluded from considering these unpublished decisions as
    a possible reflection of California law, although they have no precedential value.").

United States District Court
Northern District of California

Finally, as already discussed above, it was not unlawful for Defendants to send Plaintiff the letters absent a criminal charge or conviction since there are no such prerequisites in the statute, even assuming that Defendants could violate the statute.

**CONCLUSION**

For the reasons stated above, Defendants' motion is GRANTED without leave to amend as to 1) Plaintiff's UCL claim under the "unfair" and "unlawful" prongs to the extent Plaintiff alleges that Section 490.5 requires a criminal charge or conviction as a prerequisite to sending a demand letter, 2) Plaintiff's UCL claim under the "unlawful" prong to the extent Plaintiff alleges that Defendants' June 12 letter demanding in excess of $500 violated Section 490.5, and 3) Plaintiff's UCL claim under both the "unfair" and "unlawful" prongs to the extent Plaintiff alleges that Defendants' May 23 letter demanding $350 sought more than the $500 afforded in Section 490.5.   The Court DENIES Defendants' motion to dismiss Plaintiff's UCL claim under the "unfair" prong regarding Defendants' allegedly excessive demand contained in the June 12 letter.

IT IS SO ORDERED.

Dated: January 14, 2014

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

9

**EXHIBIT 4**

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANDREW LEE,

          Plaintiff,

   v.

THE PEP BOYS MANNY MOE AND
JACK OF CALIFORNIA, et al.,

          Defendants.

Case No.: C-12-05064 JSC

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS**

     This Fair Debt Collection Practices Act ("FDCPA") and California Unfair Competition Law

("UCL") lawsuit arises out of an employee's alleged misuse of his employee discount and for

changing the oil on his car while at work. Plaintiff Andrew Lee initiated this action in Alameda

County Superior Court against Defendants The Pep Boys Manny Moe and Jack of California ("Pep

Boys"), Palmer, Reifler & Associates ("Palmer"), and Patricia Hastings ("Hastings") and Defendants

subsequently removed the action to federal court. Now pending before the Court is Defendants'

Motion to Dismiss Plaintiff's First Amended Complaint ("Motion"). (Dkt. No. 12.) For the reasons

stated below, the Motion is GRANTED in part with leave to amend and DENIED in part.

United States District Court
Northern District of California

### ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

The following facts are taken from Plaintiff's First Amended Complaint and the documents submitted by Defendants, of which the Court takes judicial notice.[1] At some point during his employment with Pep Boys, Plaintiff "was accused of performing an oil change that he did not pay for on his own car while he was at work and using his employee discount to complete customer transactions on behalf of family members and friends." (First Amended Complaint ("FAC") ¶ 24.) "Although Plaintiff did not know at the time of these alleged acts that they purportedly violated Pep Boys' policy, Plaintiff nevertheless agreed to pay Pep Boys for the discounted transactions and his labor for the oil change. Pep Boys deducted $20.00 from Plaintiff's last paycheck as "complete resolution." (*Id.*) Pep Boys then terminated Plaintiff's employment. (*Id.*)

Following his termination, Plaintiff received two letters on Palmer, Reifler & Associates letterhead and signed by Patricia Hastings "Of Counsel to the Firm." (*See* Dkt. No. 13 at 4, 6; FAC ¶ 24.) The letters state that the "Law Firm" represents Pep Boys "concerning its civil claim against you in connection with an incident in their store 607 on 4/17/2012." (Dkt. No. 13 at 4, 6.) The letters further represent that Pep Boys, "[p]ursuant to Cal. Penal Code § 490, Theft of retail merchandise; civil liability," may consider moving forward with a statutory civil damages claim against Plaintiff if he did not settle the matter by mailing payment to the firm's P.O. box or by paying online through www.palmerpay.com. (*Id.*; *see* FAC ¶ 24.) The first letter, dated May 23, 2012, demands $350 within 20 days and the second letter, dated June 12, 2012, demands $625 within 10 days. (Dkt. No. 13.)

Plaintiff brings this action individually and as a representative of a class. He alleges that Hastings and Palmer violated the FDCPA in a number of ways: They sent communications that did not state they were from a debt collector; the communications stated payment was due in under 30 days; they threatened lawsuits they did not intend to pursue under a code which would not apply;

---

[1] Although courts generally cannot consider documentary evidence on a motion to dismiss, doing so is appropriate when the pleadings refer to the documents, their authenticity is not in question, and there are no disputes over their relevance. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (holding that courts may properly consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleadings").

1  and they sought charges in excess of those allowed by law. (FAC ¶ 32.) Plaintiff alleges that by

2  performing the above acts, Pep Boys, Hastings, and Palmer also engaged in unfair and unlawful

3  business practices, violating Cal. Bus. & Prof. Code §§ 17200 et seq. (*Id.* at ¶ 37.) Plaintiff seeks

4  restitution for "any resources and monies expended to defend against Defendants' unlawful business

5  practices," statutory damages, and attorney's fees. (FAC ¶ 39.)

6  **LEGAL STANDARD**

7      A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief

8  can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

9  2001). Dismissal under Rule 12(b)(6) may be based on either (1) the "lack of a cognizable legal

10  theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v.*

11  *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). While "detailed factual allegations" are not

12  required, a complaint must include sufficient facts to "state a claim to relief that is plausible on its

13  face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff

14  pleads factual content that allows the court to draw the reasonable inference that the defendant is

15  liable for the misconduct alleged." *Id.*

16      For purposes of ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations

17  of material fact as true and construes the pleadings in the light most favorable to the plaintiffs.

18  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court need

19  not, however, accept as true pleadings that are no more than legal conclusions or the "formulaic

20  recitation of the elements' of a cause of action." *Iqbal*, 556 U.S at 663. Mere "conclusory allegations

21  of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a

22  claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

23  **DISCUSSION**

24  **A.      FDCPA**

25      Defendants move to dismiss Plaintiff's FDCPA claim on two grounds: 1) The letters do not

26  seek to recover a "debt," as that term is defined by the FDCPA, and therefore no action may lie; and

27  2) Pep Boys is not a "debt collector" and thus is not amenable to suit under the statute. (Dkt. No. 12

28  at 1-2.)

United States District Court
Northern District of California

3

### 1.    "Debt"

In enacting the FDCPA, Congress sought to counter the "abusive, deceptive, and unfair debt collection practices" used by many debt collectors. 15 U.S.C. § 1692. However, "[n]ot all obligations to pay are considered debts under the FDCPA, so a threshold issue in a suit brought under the Act is whether or not the dispute involves a debt within the meaning of the statute." *Turner v. Cook*, 362 F.3d 1219, 1226-27 (9th Cir. 2004). The FDCPA defines debt as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). The act does not define "transaction," but there is judicial consensus that the statute is "limited in its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services." *Turner*, 362 F.3d at 1227; *see also Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) ("at a minimum, a 'transaction' under the FDCPA must involve some kind of business dealing or other consensual obligation") (internal quotation marks and citation omitted).

Damages for tortious or criminal acts are not debts because they arise from unilateral acts of negligence or criminality, not from consensual consumer transactions. *Turner*, 362 F.3d at 1227-28 (negligence); *Fleming*, 581 F.3d at 926 (criminality). "Although a thief undoubtedly has an obligation to pay for the goods and services he steals," *Bass*, 111 F.3d at 1326, the obligation arises from a non-consensual transaction—the theft—and thus is outside the scope of the FDCPA.

Defendants argue that the allegedly offending letters did not seek to collect a "debt" within the meaning of the FDCPA as a matter of law. They contend that Plaintiff's use of "his employee discount to complete customer transactions on behalf of family members and friends" and his "performing an oil change while he was at work" (FAC ¶ 24) were unilateral, non-consensual transactions and therefore the FDCPA does not apply; indeed, they emphasize that by alleging that at the time of the conduct at issue Plaintiff was unaware that his conduct violated Pep Boys' policy, Plaintiff has admitted the acts in fact violated Pep Boys' policies and were therefore non-consensual. When the allegations are viewed in the light most favorable to Plaintiff, however, the alleged

4

1    incidences of policy violations constitute consensual transactions and therefore satisfy the FDCPA's

2    "debt" requirement.

3    ### a.  Misuse of employee discount

4        Plaintiff's allegation that he used "his employee discount to complete customer transactions

5    on behalf of family and friends" and that such conduct purportedly violated Pep Boys' policy

6    plausibly alleges a consensual consumer transaction, and thus a debt, within the meaning of the

7    FDCPA. The allegation supports a common sense inference that the sale of the goods or services

8    themselves was consensual, but that Plaintiff's application of his employee discount to purchases

9    made on behalf of family and friends violated company policy. In other words, the transaction that

10   gave rise to the obligation—Plaintiff's purchase of the goods and/or services from Pep Boys—was

11   consensual; the dispute is whether he should have paid more than he did since the merchandise,

12   unbeknownst to Pep Boys, was purchased for Plaintiff's friends and family. Because the alleged

13   obligation to pay arose out of a consensual consumer transaction—the sale of goods and/or services

14   from Pep Boys to Plaintiff—the alleged obligation is considered a debt under the FDCPA. *See* 15

15   U.S.C. § 1692a(5).

16       While there do not appear to be any cases directly on point, the caselaw addressing

17   dishonored (bounced) checks is instructive. The Ninth Circuit has held that an obligation arising out

18   of the writing of a bad check is considered the result of a consensual transaction, notwithstanding

19   that the merchant in such situations consents to the transaction without knowing the check is, or will

20   become, dishonored. *Charles v. Lundgren & Assocs., P.C.*, 119 F.3d 739, 742 (9th Cir. 1997) ("[A]

21   check evidences the drawer's obligation to pay for the purchases made with the check, and should

22   the check be dishonored, the payment obligation remains."); *see also Irwin v. Mascott*, 112 F. Supp.

23   2d 937, 948 (N.D. Cal. 2000) (rejecting debt collector's argument that Cal. Penal Code § 490.5

24   applies to bad check writers because the buyers had "lawfully taken merchandise" with the

25   merchant's consent, constituting a consumer transaction under the FDCPA); *Bass v. Stolper,*

26   *Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997) (holding that dishonored

27   checks constitute a "debt" because the FDCPA "reach[es] those obligations to pay arising from

28   consensual transactions, where parties negotiate or contract for consumer-related goods or

1   services"). Similarly, here, viewing the allegations in the light most favorable to Plaintiff, Pep Boys

2   consented to the sale of goods and services to Plaintiff, it just did not consent to what Plaintiff paid,

3   just as the retailers in *Charles* and *Bass* consented to the sale but not to what the consumer paid

4   (nothing, since the check bounced). Although Pep Boys may not have consented to the transactions

5   had they known the goods were for the use of Plaintiff's family and friends, or would have insisted

6   that Plaintiff pay the undiscounted price, the exchange of money for merchandise constitutes a

7   consensual transaction.

8         The cases cited by Defendants are inapposite. In *Fleming*, the court determined that an action

9   for tortious conversion did not create a debt. 581 F.3d at 926. There, Barnes, an employee of Ace

10  Hardware, stole goods from his employer and resold them at discounted prices to others. *Id.* at 924.

11  M3, Ace's assignee, brought a lawsuit for conversion against the purchasers. *Id.* at 925. The

12  purchasers then brought suit under the FDCPA, alleging that their purchases constituted consensual

13  transactions with Ace. *Id.* at 926. The court disagreed, holding that "Barnes's actions far exceeded

14  the scope of Ace's consent, placing the resulting [purchasers'] obligations well outside the scope of

15  the debt obligation contemplated by the FDCPA." *Id.* A central, undisputed fact in *Fleming* was that

16  Barnes had stolen the products the plaintiffs eventually purchased. Here, in contrast, Pep Boys *sold*

17  Plaintiff the goods and/or services and consented to his taking possession of them.

18        Defendants also cite *Shorts v. Palmer*, 155 F.R.D. 172, 174 (S.D. Ohio 1994) and

19  *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1165 (3d Cir. 1987). These cases, however, do

20  not apply because the plaintiffs in those cases did not even allege that the debt arose out of a

21  consensual consumer transaction. *See Shorts*, 155 F.R.D. at 174 (dismissing plaintiff's FDCPA

22  claim where plaintiff was accused of shoplifting and did not allege that the debt arose out of a

23  consumer transaction); *Zimmerman*, 834 F.2d at 1165 (dismissing plaintiff's FDCPA claim where

24  plaintiff did not allege that the debt arose out of a consumer transaction and argued that the FDCPA

25  should cover allegations of theft). Further, the holding in *Zimmerman* was based on the premise that

26  a transaction giving rise to a debt within the meaning of the act must involve the "offer or extension

27  of credit to a consumer." *Zimmerman*, 834 F.2d at 1168. This rationale, however, has been expressly

28  rejected by the Ninth Circuit. *See Charles*, 119 F.3d at 742.

United States District Court
Northern District of California

6

1      At oral argument Defendants suggested that the transactions would not have been consensual

2  if Plaintiff did not have the right to make the purchases himself; for example, if Pep Boys' policy

3  was that employees could not "ring up" their own purchases, and instead required others to transact

4  purchases for employees. The short answer is that such policy, if it existed, is not alleged in the

5  FAC. The FAC plausibly supports an inference that Plaintiff's offense was applying the employee

6  discount to the purchases, not making the purchases in the first instance.

7      Defendants' insistence that Plaintiff's purchases were fraudulent, that is, that he knowingly

8  and repeatedly misused his employee discount for the benefit of his family and friends, does not

9  mean that Plaintiff cannot state a FDCPA claim as a matter of law. Plaintiff alleges that he was

10  unaware that his use of his employee discount in that manner violated Pep Boys' policy. (FAC ¶ 24.)

11  In *Bass,* for example, the Seventh Circuit, in affirming summary judgment against the defendants,

12  rejected a similar argument where the defendants "failed to conclusively establish that [plaintiff]

13  intended to pass a worthless check." *Bass*, 111 F.3d at 1329 (7th Cir. 1997). Similarly, here, the

14  FAC's allegations do not conclusively establish that Plaintiff intended to misuse his employee

15  discount. Moreover, the *Bass* court noted that even if such fraudulent intent was present, the court

16  would be uncomfortable "with the proposition that the courts should create a fraud exception where

17  none exists in the Act's text." *Id.* at 1329-30.

18      The Court is also not persuaded that the allegedly offending letters' characterization of

19  Plaintiff's conduct as "theft' in violation of Penal Code section 490.5(c) means the transactions were

20  non-consensual. The Court's focus is on the nature of the transaction itself, not Defendants' self-

21  serving characterization of the transaction. *See Fleming*, 581 F.3d at 925 (holding that the

22  determination of whether a debt exists within the meaning of the FDCPA requires courts "to

23  examine the alleged 'transaction' and determine whether it is covered by the FDCPA"); *Betts v.*

24  *Equifax Credit Info. Servs., Inc.*, 245 F. Supp. 2d 1130, 1133 (W.D. Wash. 2003) (stating that in

25  determining whether a "debt" falls under the FDCPA "[t]he pertinent factual occurrence to consider

26  is the one that gave rise to the deficiency claim").

27

28

United States District Court
Northern District of California

### b. The oil change

Turning to the alleged uncompensated oil change Plaintiff provided himself, the collection letters warn Plaintiff that failure to make the requested payments may lead to civil liability "[p]ursuant to Cal. Penal Code § 490.5 'Theft of retail *merchandise*; civil liability.'" (Dkt. No. 13 (emphasis added).) Section 490.5 defines "merchandise" as "any personal property, capable of manual delivery, displayed, held or offered for retail sale by a merchant." Cal. Penal Code § 4905.5(g)(1). Plaintiff asserts that he paid for the oil and the oil filter, but did not pay for his labor. (FAC ¶ 24; Opposition at 10.) Because the letters appear to seek only payment arising out of theft of merchandise, Plaintiff's supposed theft of *labor* appears to be outside of the letters' scope. Although the FAC does not address this disparity, the parties seem to agree that the alleged theft of labor is one of the bases for the letters. Given this agreement, the Court will address whether Plaintiff's alleged theft of labor constitutes a "transaction," notwithstanding its dubious connection to the collection attempts.

Viewing the allegations in the light most favorable to Plaintiff, the oil change Plaintiff received from Pep Boys, but did not pay for, may also be considered a consensual consumer transaction. The FAC supports an inference that it was Pep Boys' policy that if an employee changed his oil at work, the employee must pay for his labor. This inference flows from the allegation that after Plaintiff became aware of Pep Boys' policy, he agreed to pay Pep Boys for his labor for the oil change and that Pep Boys deducted $20 as a complete resolution of the matter. Under this scenario, the underlying transaction giving rise to the obligation to pay—the oil change—was consensual, similar to the bounced check scenario. The obligation to pay arose out of the agreement that if an employee changes the oil in his car he must pay for his labor.

The allegations of the FAC are vague enough, however, that they could also support an inference that Pep Boys' policy was that employees are not allowed to change the oil in their own cars at work, regardless of whether they subsequently pay for materials and labor. This inference arises from the FAC's allegations that Plaintiff's conduct violated a "policy," without any further description of that policy, and from the allegation that Plaintiff was terminated. Under such circumstances the obligation to pay might not have arisen from a consensual transaction since Pep

8

Boys would not have agreed to allow its employee to change his car's oil, even if the employee paid for his own labor. On Defendants' Motion to Dismiss, however, the Court must draw all inferences in Plaintiff's favor.

Because the Court cannot hold as a matter of law that Plaintiff's alleged obligations did not arise out of consensual transactions, Plaintiff has stated a claim under the FDCPA. Defendants' Motion to Dismiss Plaintiff's FDCPA claim is accordingly DENIED.

### 2.   "Debt Collector"

Defendants also argue that Pep Boys is exempt from the FDCPA because it is not a "debt collector" under the statute. Pursuant to the FDCPA, a "debt collector" is defined as "any person . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a. Pep Boys asserts that it is a creditor, not a debt collector, and the two categories are mutually exclusive. The argument is irrelevant because, as Plaintiff represents in its response to the Motion, and as the FAC itself reveals, the first cause of action is alleged against only Hastings and Palmer. Nonetheless, to the extent Plaintiff's FAC does allege that Pep Boys is a debt collector, Defendants' argument is correct: "The term debt collector does not include . . . any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C.A. § 1692a; *see also De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1074 (9th Cir. 2011) ("[T]he person who originated the debt ... is not considered a debt collector."). Because Plaintiff alleges that Pep Boys is the creditor, he cannot state a FDCPA claim against Pep Boys.

### B.   Cal. Bus. & Prof. Code § 17200

#### 1.   Standing

To have standing to bring a claim under California's Unfair Competition Law ("UCL"), a plaintiff must show that he or she "suffered injury in fact" and "lost money or property as a result" of an unfair business practice. Cal. Bus. & Prof. Code § 17204; *In re Tobacco II Cases*, 46 Cal. 4th 298, 325 (2009). Injury in fact exists where, as a result of the unfair business practice, a plaintiff is "required to enter into a transaction, costing money or property that would otherwise have been unnecessary." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011).

United States District Court
Northern District of California

A plaintiff "proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *In re Tobacco*, 46 Cal. 4th at 306. Consequently, "a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct." *Id.* at 326. However, a "plaintiff is not required to allege that [the challenged] misrepresentations were the sole or even the decisive cause of the injury-producing conduct." *Id.* "'Reliance' as used in the ordinary fraud context has always been understood to mean reliance on a statement for its truth and accuracy. It follows that a UCL fraud plaintiff must allege he or she was motivated to act or refrain from action based on the truth or falsity of a defendant's statement, not merely on the fact it was made." *Kwikset Corp.*, 51 Cal. 4th at 327 n.10.

Plaintiff alleges that he lost $20 when Pep Boys deducted the money from his last paycheck. (FAC ¶ 24.) This allegation of lost money is sufficient to support standing for Plaintiff's UCL claim against Pep Boys; however, it cannot serve as the basis for his claim against Hastings and Palmer because the loss occurred before they became involved in the dispute. In addition, the $20 payment also does not establish standing for a claim concerning Pep Boy's conduct subsequent to the payment since such conduct did not cause Plaintiff to make the payment.

As for Plaintiff's UCL claims against Hastings and Palmer, Plaintiff argues that he incurred out-of-pocket costs, including hiring an attorney, to respond to the letters authorized by Pep Boys and sent by Hastings and Palmer. (Opposition at 14 (citing FAC ¶ 39).) The FAC, however, does not include this allegation. Rather, Plaintiff seeks restitution for "any resources and monies expended to defend against Defendants' unlawful business practices, including without limitation, any attorney's fees and costs expended in responding to Defendants' unlawful communications." (FAC ¶ 39). Seeking restitution for "any resources and monies expended" is not the same as specifically alleging that resources and monies were *actually* expended.

Defendants argue that, even if Plaintiff adequately alleges costs for attorney's fees incurred as a result of the letters, attorney's fees cannot serve as the basis for UCL standing. Defendants are correct that attorney's fees expended to bring a UCL claim do not constitute injury in fact. *See*

United States District Court
Northern District of California

*Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 989 (N.D. Cal. 2010). However, money spent responding to a collection action can constitute injury in fact for the purposes of the UCL, even where the plaintiff has not paid any money to the defendants. *See Koller v. W. Bay Acquisitions, LLC*, 2012 WL 2862440 at *8 (N.D. Cal. July 11, 2012) (holding there was standing where plaintiff alleged he incurred costs of defense, including attorneys' fees and costs in conjunction with hiring counsel to respond to Defendants' demand letters); *Tourgeman v. Collins Fin. Servs., Inc.*, WL 6527758 at *8 (S.D. Cal. Nov. 23, 2009); *Janti v. Encore Capital Grp., Inc.*, WL 3058260 at *7 (S.D. Cal. Aug. 3, 2010) (finding standing where plaintiffs alleged they were forced to incur legal expenses in defense of collection actions filed in state court). Accordingly, Plaintiff's UCL claim against Hastings and Palmer is dismissed for lack of standing with leave to amend.

### 2.   Unlawful, Unfair, or Fraudulent Business Practices

The UCL broadly prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §§ 17200 et seq. By proscribing any "unlawful" business practice, the UCL "borrows violations" of other state and federal laws and makes them independently actionable. *Cel-Tech Commc'n, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). A practice may "be deemed unfair or deceptive" under the UCL "even if it is not unlawful." *Id.* An unfair business practice is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (internal quotation marks omitted). Whether a business practice is unfair "involves an examination of that practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 826 (9th Cir. 2008). "An employer's business practices concerning its employees" are within the scope of the prohibition against unfair competition. *Wilkinson v. Times Mirror Corp.*, 215 Cal. App. 3d 1034, 1052 (1989). "What constitutes 'unfair competition' or 'unfair or fraudulent business practice' under any given set of circumstances is a question of fact . . . ." *People v. McKale*, 25 Cal. 3d 626, 635 (1979).

"'Fraudulent,' as used in the statute, does not refer to the common law tort of fraud but only requires a showing that members of the public 'are likely to be deceived.'" *Olsen v. Breeze*, 48 Cal.

United States District Court
Northern District of California

App. 4th 608, 618 (1996). Although fraud is not a necessary element of a claim under the UCL, where a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of that claim[,] . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)" of the Federal Rules of Civil Procedure. *Kearns v. Ford Motor, Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). To satisfy Rule 9(b), the plaintiff must include "the who, what, when, where, and how" of the fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994). A claim for fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

Regarding the unlawful prong, Plaintiff has adequately alleged a violation of the FDCPA against only Hastings and Palmer; however, as noted above, Plaintiff has not adequately alleged standing under the UCL to pursue his UCL claim against those defendants.

Under the unfair prong, Plaintiff does have standing to bring his UCL claim against Pep Boys arising from his $20 loss, but the FAC does not adequately allege any "unfair" practices by Pep Boys that caused Plaintiff to pay Pep Boys the $20. Plaintiff alleges that he *agreed* to the $20 deduction from his last paycheck in exchange for resolution of the dispute over the above-discussed transactions. (*See* FAC ¶ 24.) Plaintiff has not alleged facts that show this agreement was somehow unfair or that he was otherwise coerced into the agreement. To the extent Plaintiff contends that Pep Boys' conduct subsequent to the payment violated the UCL, as noted above, Plaintiff has not established standing to bring such a claim.

Finally, regarding the fraudulent prong, to the extent Plaintiff alleges that Pep Boys' actions in accepting the $20 payment from Plaintiff as complete resolution constitutes fraudulent conduct, the claim is dismissed. Plaintiff has not met the heightened pleading standards of Rule 9(b), which requires that the plaintiff include "the who, what, when, where, and how" of the fraud. *Vess*, 317

1    F.3d at 1106. The FAC fails to include basic facts concerning the statement, such as what was said,

2    who said it, and when.

3         Accordingly, Defendants' Motion to Dismiss Plaintiff's UCL claim is GRANTED with leave

4    to amend.

5         **3.      Litigation Privilege**

6         Finally, Defendants argue that the litigation privilege, California Civil Code section 47(b),

7    prevents Plaintiff from basing his UCL claim on the letters sent by Hastings and Palmer. The "usual

8    formulation" of the privilege is that it "applies to any communication (1) made in judicial or quasi-

9    judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the

10   objects of the litigation; and (4) that [has] some connection or logical relation to the action." *Silberg*

11   *v. Anderson*, 50 Cal. 3d 205, 211–212 (1990. "The principal purpose of the privilege is "to afford

12   litigants and witnesses the utmost freedom of access to the courts without fear of being harassed

13   subsequently by derivative tort actions." *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41

14   Cal. 4th 1232, 1241 (2007). While the privilege extends to some communications made outside

15   official judicial proceedings, it applies to "prelitigation communication[s]" only if the

16   communications "relate[] to litigation that is contemplated in good faith and under serious

17   consideration." *Action Apartment*, 41 Cal. 4th at 1241. "No public policy supports extending a

18   privilege to persons who attempt to profit from hollow threats of litigation." *Id.* at 1251. "[T]he

19   privilege attaches at that point in time that imminent access to the courts is seriously proposed by a

20   party," and "[t]he mere potential or bare possibility that judicial proceedings might be instituted in

21   the future is insufficient to invoke the litigation privilege." *Edwards v. Centex Real Estate Corp.*, 53

22   Cal. App. 4th 15, 36 (1997). "Whether a prelitigation communication relates to litigation that is

23   contemplated in good faith and under serious consideration is an issue of fact." *Action Apartment*, 41

24   Cal. 4th at 1241.

25        The FAC alleges that although the collection letters threatened a civil lawsuit, "Defendants

26   had no intention of bringing such lawsuits, especially given that such lawsuits must be brought in

27   small claims court." (FAC ¶ 21.) This allegation, which the Court must accept as true, supports an

28   inference that litigation was not contemplated in good faith and under serious consideration at the

United States District Court
Northern District of California

13

1    time the letters were sent. Thus, dismissal of Plaintiff's UCL claim at this stage in the action based

2    on the litigation privilege would be inappropriate.

3                                **CONCLUSION**

4         For the reasons stated, the Motion to Dismiss the First Cause of Action for violation of the

5    FDCPA is DENIED and the Motion to Dismiss the Second Cause of Action for violation of the UCL

6    is GRANTED with leave to amend. A second amended complaint, if any, shall be filed within

7    twenty (20) days of the date of this Order.

8         This Order disposes of Docket No. 12.

9

10        IT IS SO ORDERED.

11

12    Dated: December 7, 2012

13                                              _Jacqueline S. Corley_

14                           JACQUELINE SCOTT CORLEY
                                     UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California