United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SEPHORA USA, INC.,

Plaintiff,

v.

PALMER, REIFLER & ASSOCIATES, P.A.,

Defendant.

Case No. 15-cv-05750-JCS

**ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS**

Re: Dkt. No. 31

## I. INTRODUCTION

Plaintiff Sephora USA, Inc. ("Sephora") brings this action alleging that Defendant Palmer, Reifler & Associates, P.A. ("PRA") breached its obligations under a contract for legal services that includes a provision requiring each party to defend and indemnify against claims arising from that party's negligence or improper conduct. Sephora seeks to recover attorneys' fees incurred successfully defending a case in California state court that arose at least in part from PRA's conduct under the parties' agreement. PRA answered Sephora's Complaint and now moves for judgment on the pleadings. The Court held a hearing on May 13, 2016. For the reasons discussed below, PRA's Motion is DENIED.[1]

## II. BACKGROUND

### A. Allegations of the Complaint and Facts Subject to Judicial Notice

In 2005, Sephora contracted with PRA for "Loss Recovery Services" through an "Attorney/Client Service Agreement" (hereinafter, the "Contract"). *See* Compl. (dkt. 1) ¶¶ 1, 8; Def.'s Request for Judicial Notice ("DRJN," dkt. 32) Ex. 1 (the Contract).[2] The Contract provided

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C § 636(c).

[2] The Contract is properly subject to judicial notice because the Court may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions,

that PRA would pursue "damages and/or civil penalties for theft offenses"—i.e., shoplifting—on behalf of Sephora, and would remit proceeds of those recovery efforts to Sephora, less attorneys' fees structured a percentage of the amount recovered. Contract §§ 1–2; Compl. ¶ 10. PRA agreed to "perform its services in accordance with all laws and regulations, including without limitation all laws relating to the pursuit of, and collection for, theft claims." Contract § 1; Compl. ¶ 9. The present action turns on the Contract's indemnification provision:

> **Section 5. Indemnification.**
>
> Each party agrees to defend and indemnify the other party from and against any and all suits, judgments, or liabilities directly arising from the negligence or other improper conduct of such party.

Contract § 5.

Tamera Renn, the mother of a minor child alleged to have shoplifted from a Sephora store in Glendale, California, filed a purported class action against Sephora in July of 2014 captioned *Renn v. Sephora USA, Inc.*, No. BC551523, in the California Superior Court for the County of Los Angeles. Compl. ¶ 12; DRJN Ex. 2 (the complaint in *Renn*).[3] Renn alleged that Sephora, and PRA acting on Sephora's behalf, engaged in unfair, unlawful, and fraudulent business practices, intentional misrepresentation, and fraud. DRJN Ex. 2. Although Sephora now alleges that Renn's claims "were based entirely on allegations of improper conduct by PRA," Compl. ¶ 13, Renn's actual allegations involved conduct by both Sephora and PRA, *see generally* DRJN Ex. 2.

According to Renn's complaint, "Sephora is a knowing participant in . . . an unlawful scheme" to profit by demanding more money than it could actually obtain from alleged shoplifters, sometimes on flimsy evidence, with no intent to follow through on its threats of legal action. DRJN Ex. 2 ¶¶ 2–4. Many of Renn's allegations relate to PRA's conduct on behalf of Sephora, particularly sending demand letters and making telephone calls to Renn and other alleged shoplifters (or parents of minors alleged to have shoplifted). *See id.* ¶¶ 5, 6, 24, 33, 35. Other allegations, however, relate more specifically to Sephora—in particular, an allegation that "the

---

but which are not physically attached to the plaintiff's pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal quotation marks, brackets, and citations omitted).

[3] The *Renn* complaint is subject to judicial notice as a "document[] whose contents are alleged in a complaint and whose authenticity no party questions." *Knievel*, 393 F.3d at 1076.

United States District Court
Northern District of California

amount of Sephora's demand is a preset amount unilaterally determined by Sephora." *Id.* ¶ 83. After receiving demand letters for first $500,[4] then $775, and finally $200, Renn—at that point represented by counsel—paid Sephora $200. *Id.* ¶¶ 21, 24, 29, 35, 36, 46. She alleged that she would not have done so but for multiple misrepresentations in the letters, including misrepresentations as to whether California law actually authorized recovery in the amounts that Sephora (via PRA) claimed. *See id.* ¶¶ 64–65, 73, 86–87. Renn did not name PRA as a defendant in her lawsuit. *See generally id.*

After receiving the complaint in *Renn*, "Sephora made written demand on PRA that it bear the cost of defense and otherwise indemnify Sephora from and against the asserted claims." Compl. ¶ 15; DRJN Ex. 10 (indemnification demand letter dated July 25, 2014).[5] Sephora's letter to PRA invoked the indemnification provision of the Contract, "demand[ed] that PRA bear the costs to defend and indemnify Sephora from and against the claims in the Renn Complaint," and informed PRA that "Sephora retained the right to control the defense of this matter" and would therefore submit invoices for its attorneys' fees to PRA. DRJN Ex. 10. "Despite continuing and repeated requests, PRA has failed and refused to reimburse Sephora for the costs and fees incurred in defense of the *Renn* matter." Compl. ¶ 16.

Sephora, through outside counsel at the Bryan Cave firm, filed a demurrer and an anti-SLAPP motion to strike. *See* Compl. ¶ 14. The superior court granted the latter and entered judgment in Sephora's favor, holding that the demand letters PRA sent to Renn were protected as "writings in contemplation of litigation" because they were captioned as "settlement offers." DRJN Ex. 9 at ECF p. 13.[6] The court held that Sephora's alleged lack of any actual intent to

[4] Paragraph 24 of the *Renn* complaint apparently erroneously alleges that the first demand letter sought $550. *See* DRJN Ex. 2 ¶ 24; *see also id.* at ECF p. 25 (copy of the first demand letter attached as an exhibit to the complaint, requesting that Renn pay $500 to settle the matter). That discrepancy is not relevant to the present Motion.

[5] Sephora's demand letter to PRA is subject to judicial notice as a "document[] whose contents are alleged in a complaint and whose authenticity no party questions." *Knievel*, 393 F.3d at 1076.

[6] The state court's order is subject to judicial notice as a "document[] whose contents are alleged in a complaint and whose authenticity no party questions," *Knievel*, 393 F.3d at 1076, and also as a public record not reasonably subject to dispute, *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012). This Court expresses no opinion on the merits of the state court's decision.

initiate litigation was irrelevant, in part because Renn did not dispute Sephora's account of her daughter shoplifting. *See id.* at ECF pp. 13–17. According to the court, the amounts that the letters demanded from Renn may not have been supported by law, but such "exaggerating" and "bluff[ing]" fell within the normal process of litigation and settlement. *Id.* at ECF p. 15. Renn did not appeal the judgment. Compl. ¶ 14.

Although Sephora prevailed in *Renn*, Sephora now seeks to recover its attorneys' fees and costs in that action from PRA pursuant to section 5 of the Contract. *See id.* ¶¶ 19–20.

**B. Parties' Arguments**

**1. PRA's Motion**

PRA moves for judgment on the pleadings primarily on the basis that Sephora's Complaint alleges a failure to "reimburse" the cost of its defense, and the Contract does not explicitly frame any relevant duty using the word "reimburse." Mot. (dkt. 31) at 13. Along the same lines, PRA argues that Sephora never properly tendered the defense of the *Renn* action to PRA, because Sephora's letter demanded "that PRA bear the costs to defend" rather than actually defend, and "Sephora retained the right to control the defense." *See* DRJN Ex. 10; Mot. at 13–14. According to PRA, although the Contract provided for a duty to defend in some circumstances, it did not provide for a duty to bear the cost of Sephora's defense where Sephora declined to relinquish control of the defense. *See* Mot. at 13–14; *see also id.* at 15 (presenting Sephora's decision to retain the defense as a reason to deny leave to amend).

PRA frames its remaining arguments as reasons why leave to amend should be denied. First, PRA argues that the Contract only creates a duty to defend or indemnify against claims actually based on a party's own negligence or other wrongful conduct. *Id.* at 15–20 (citing *Nat'l R.R. Passenger Corp. v. Rountree Transp. & Rigging, Inc.*, 286 F.3d 1233, 1259–63 (11th Cir. 2002)). Because the *Renn* court found that the letters PRA sent to Renn were not actionable, PRA argues that—as a matter of law—its conduct was not negligent or improper, and thus did not trigger any duty to defend or indemnify Sephora. *Id.* at 19.

Next, PRA argues that Florida law disfavors indemnification of a party's own sole or joint liability, as opposed to purely vicarious liability arising from the acts of the indemnitor. *Id.* at

20–21 (citing, *e.g.*, *Cox Cable Corp. v. Gulf Power Co.*, 591 So. 2d 627, 629 (Fla. 1992)). PRA disputes Sephora's characterization of Renn's complaint as based solely on PRA's actions, citing as evidence to the contrary: (1) the allegation that Sephora was a "knowing participant" in an "unlawful scheme," *see* DRJN Ex. 2 ¶ 4; (2) the allegation that Sephora and other merchants embarked on a business strategy of detaining purported shoplifters for the purpose of making demands for payment, *see id.* ¶ 2; (3) the allegation that Renn and her daughter suffered harm at a Sephora store, *see id.* ¶ 14; (4) the allegation that Sephora did not adequately consult with PRA regarding the facts at issue; *see id.* ¶ 21; (5) the allegation that Sephora unilaterally determined how much to demand from purported shoplifters, *see id.* ¶ 83; (6) the fact that Renn sought an injunction against Sephora's "searches, seizures, and invasions of privacy," *see id.* ¶ 90; and (7) the fact that Renn sought punitive damages against Sephora, *see id.* at 22 (prayer for relief). Mot. at 20–24.

**2. Sephora's Opposition**

Sephora argues throughout its Opposition that PRA's arguments improperly conflate two separate duties under Florida law: the duty to defend and the duty to indemnify, both of which appear in the Contract's indemnity provision. *See* Opp'n (dkt. 34) at 7–8.

According to Sephora, the duty to defend arises from the filing of a covered complaint, without any requirement of formal tender, and thus any defect in Sephora's tender letter—such as demanding reimbursement of defense costs rather than demanding that PRA defend—is irrelevant to whether PRA had a duty to defend. *Id.* at 8–9. Sephora argues that so long as an indemnitor has notice of a claim, it is only relieved of the duty to defend under Florida law if the indemnitee refuses to cooperate in the defense and the indemnitor is materially prejudiced by that refusal. *Id.* at 9. Sephora contends that its success in obtaining early dismissal of the *Renn* case, as compared to the persistence of a different case against PRA and another defendant in federal court, demonstrates that PRA was not prejudiced by Sephora maintaining control of the defense. *Id.* at 9–10 (citing *Lee v. The Pep Boys*, No. 3:12-cv-5064-JSC (N.D. Cal.)).

Sephora also argues that its letter demanding that PRA reimburse the cost of Sephora's defense was consistent with PRA's duty to indemnify, independent of the duty to defend. *Id.* at

10−12.

As for PRA's argument that the Contract only creates a duty where PRA is actually found to be at fault, Sephora responds that Florida law conditions the duty to defend "'entirely on the facts and legal theories *alleged* in the pleadings and claims against the insured,'" drawing from authority largely related to insurers' duty to defend. *Id.* at 12 (quoting *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1275 (11th Cir. 2008)) (emphasis in Opp'n; third-level quotation marks omitted). According to Sephora, that authority establishes that the outcome of the claim is not relevant to the duty to defend. *Id.* at 12−14. Sephora also argues that a contrary rule—conditioning the duty to defend on whether the indemnitor is actually found to be negligent—would mean that the parties would not know whether there is a duty to defend until after a case is decided (at which point there is no longer any case to defend) and would create perverse incentives for the indemnitee. *Id.* at 14−15. According to Sephora, the Eleventh Circuit's decision in *Rountree* is distinguishable, and moreover not binding on this Court and unpersuasive in its interpretation of Florida law. *Id.* at 15−19.

Sephora largely does not dispute that Florida law requires a clear statement of intent before an agreement to defend and indemnify will be construed as encompassing allegations of joint, rather than merely vicarious, liability. *See id.* at 19−23. According to Sephora, however, the material allegations of Renn's complaint alleged wrongdoing by PRA on behalf of Sephora, not by Sephora itself, because "each of Renn's claims is premised upon the sending of unlawful, legally inaccurate and fraudulent demand letters by PRA." *See id.* Where PRA sees allegations that Sephora failed to adequately consult with PRA about the demand letters as claims of Sephora's wrongdoing, Sephora sees the same allegations as establishing that it had no role in the allegedly wrongful conduct. *See id.* at 22 & n.13. Sephora contends that Florida law looks to whether the claims are based on the indemnitee's "active" fault, and argues that Renn's claims do not meet that standard as to Sephora's alleged involvement. *Id.* at 22 (citing *Sanislo v. Give Kids the World, Inc.*, 157 So. 3d 256, 264−65 (Fla. 2015)).

Finally, Sephora argues that even if the Court grants PRA's Motion, Sephora should be allowed leave to amend because it can allege that PRA's subsequent conduct after Sephora made

its demand evinces PRA's understanding that it was liable for defense costs under the Contract. *See id.* at 23−24.

**3. PRA's Reply**

PRA's Reply begins by restating the argument that because the Contract did not include the specific terminology found in the Complaint—a duty to "reimburse" Sephora for defense costs—the Complaint should be dismissed, asserting that "[i]t really is just that simple." Reply (dkt. 36) at 1. According to PRA, Sephora's Complaint does not actually invoke a duty to defend. *Id.* at 1, 3−4.

PRA also contends that Sephora's demand letter should excuse it from any duty to defend because by asserting that it retained the right to control the defense, Sephora refused to allow PRA to defend. *Id.* at 4−6. Citing insurance cases and asserting that it has found no applicable cases outside of that context, PRA argues that Florida law entrusts the right to control the defense to the insurer, and thus by extension to an indemnitor like PRA. *Id.* at 6. PRA's only response to Sephora's argument that noncooperation only defeats a duty to defend if it is material and prejudicial is a footnote asserting that "[c]ontrol over the expense of litigation is always a material concern to those who write the checks," and that PRA is "confident" that it could have defended the matter for lower fees than those Bryan Cave billed Sephora. *Id.* at 5 n.3.

On the question of whether the Contract's duties to indemnify and defend arise from allegations of fault or actual fault, PRA faults Sephora for relying on insurance cases in this non-insurance context, and argues instead that the Eleventh Circuit's *Rountree* decision is both on point and authoritative as to Florida law. *Id.* at 2, 7−12. As for Sephora's argument that it would be illogical to condition a duty to defend on a determination of fault, PRA argues that structuring the duty in that manner is reasonable because "the indemnitor may admit such fault, may have earlier been found to be at fault, or it may be found as a co-defendant or cross-defendant to be at fault in the litigation in which an indemnitee seeks a defense." *Id.* at 12−13.

PRA also restates its arguments that several allegations of the *Renn* complaint go to Sephora's own or joint liability, rather than merely vicarious liability for alleged wrongdoing by PRA. *Id.* at 13−15.



United States District Court
Northern District of California

**4. Sephora's Evidence and PRA's Objections to Judicial Notice**

Sephora submits a declaration by its counsel Daniel Rockey attaching communications between the parties and orders in an unrelated case involving PRA that Sephora believes are subject to judicial notice. *See generally* Rockey Decl. (dkt. 34-1). PRA opposes judicial notice of those materials. *See generally* Response and Objection (dkt. 37). The materials at issue are not relevant to the outcome of the Motion. This Order therefore does not discuss them in detail and declines to reach the parties' arguments regarding their eligibility for judicial notice.

## III. ANALYSIS

### A. Jurisdiction

Although not mentioned in the present Motion, PRA's Answer asserts that the Court "lacks jurisdiction over this case and controversy." Answer at 4 (first affirmative defense). Because subject matter jurisdiction cannot be waived, this Order addresses it as a threshold issue. The Complaint alleges that "Sephora is a Delaware corporation with its principal place of business in San Francisco, California," that "PRA is a Florida Professional Corporation with its principal place of business in Orlando, Florida" (which PRA admits in its Answer), and that Sephora's attorneys' fees in the *Renn* case exceeded $75,000. Compl. ¶¶ 3, 4, 20; Answer ¶ 4. Because PRA nevertheless challenged subject matter jurisdiction in its Answer, the Court ordered PRA to file a declaration stating the citizenship of its partners or members, on the possibility the PRA might be considered a partnership for diversity purposes. Order to Show Cause (dkt. 41). PRA filed a declaration stating that it is a corporation under Florida law and that, regardless, its only two owners are citizens of Florida. Reifler Decl. (dkt. 42). The Court therefore has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds the statutory threshold.

### B. Legal Standard for Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken

as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation and internal quotation marks omitted).

Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In ruling on a motion under Rule 12(c), the Court must accept all factual allegations in the complaint as true and view them in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

Dismissal at the pleading stage may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

As a general rule, the Court may not consider factual material extrinsic to the pleadings when ruling on a motion under Rule 12(c). *See* Fed. R. Civ. P. 12(d). The Court may, however, consider extrinsic material that is properly the subject of judicial notice as long as the facts noticed are not "subject to reasonable dispute." *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting Fed. R. Evid. 201(b)).

### C. Contract Interpretation Under Florida Law

The parties agree that, based on the Engagement Letter's choice-of-law provision, Florida law governs this action. *See* Mot. at 12; Opp'n at 7 n.7; Engagement Letter § 7.3. Under Florida

law, a court should generally interpret a contract based on its plain language, guided by "reason and probability":

> "Where the terms of a contract are clear and unambiguous, the parties' intent must be gleaned from the four corners of the document." *Crawford v. Barker*, 64 So. 3d 1246, 1255 (Fla. 2011). An ambiguous provision in a contract is to be construed against the drafter. *City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000). However, "[a] true ambiguity does not exist merely because a contract can possibly be interpreted in more than one manner. Indeed, fanciful, inconsistent, and absurd interpretations of plain language are always possible. It is the duty of the trial court to prevent such interpretations." *Am. Med. Int'l, Inc. v. Scheller*, 462 So. 2d 1, 7 (Fla. 4th DCA 1984). Accordingly, contractual language is ambiguous only if it is susceptible to more than one *reasonable* interpretation. *See Penzer v. Transportation Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010). It thus follows that where one interpretation of a contract would be absurd and another would be consistent with reason and probability, the contract should be interpreted in the rational manner. *King v. Bray*, 867 So. 2d 1224, 1227 (Fla. 5th DCA 2004).

*BKD Twenty-One Mgmt. Co., Inc. v. Delsordo*, 127 So. 3d 527, 530 (Fla. Dist. Ct. App. 2012); *see also Vyfvinkel v. Vyfvinkel*, 135 So. 3d 384, 385–86 (Fla. Dist. Ct. App. 2014). In other words, "'[a] reasonable interpretation of a contract is preferred to an unreasonable one.'" *Danforth Orthopedic Brace & Limb, Inc. v. Fla. Health Care Plan, Inc.*, 750 So. 2d 774, 776 (Fla. Dist. Ct. App. 2000) (quoting *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 941 (Fla. 1979)).

Interpretation of an ambiguous contract may require extrinsic evidence; in such circumstances, a case may not be suitable for resolution at the pleading stage or even summary judgment. *See id.* at 776−77.

**D. The Phrasing of Sephora's Complaint Adequately Invokes a Duty to Defend or Indemnify**

PRA's first argument, that the Complaint fails because it invokes a duty to "reimburse" that is not explicitly found in the contract, *see* Mot. at 5−7, calls for a degree of formality in pleading beyond that which is required in the federal courts. "A plaintiff . . . must plead *facts* sufficient to show that her claim has substantive plausibility," but the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 135 S. Ct. 346, 347−48 (2014)

(per curiam) (emphasis added). The Rules "are designed to discourage battles over mere form of statement." *Id.* at 347 (quoting an advisory committee report).

The Complaint makes clear that Sephora's claim for damages arises from PRA's agreement "to 'defend and indemnify' Sephora 'from and against any and all suits, judgments, or liabilities directly arising from [PRA's] negligence or other improper conduct.'" Compl. ¶ 11 (quoting Contract § 5) (alteration in original). The allegation that "PRA has failed and refused to *reimburse* Sephora for the costs and fees incurred in defense of the *Renn* matter," *id.* ¶ 16 (emphasis added), while perhaps imprecise in deviating from the language of the Contract, is not inconsistent with the contractual duties quoted above, nor does it negate the fact that Complaint gives PRA adequate notice of the claims against it—as demonstrated by PRA's comprehensive response to those claims in the remainder of its Motion. This is not a basis for dismissal.

**E. PRA's Duty to Defend Does Not Require a Determination of Fault**

The parties' dispute regarding whether the favorable judgment in *Renn* precludes recovery from PRA in the present action turns in large part on the significance and application of Eleventh Circuit's decision in *Rountree*. There is no dispute that, as a general rule, a duty to defend arises from the allegations of the complaint, not the outcome of the case. *Rountree* itself acknowledges and summarizes that standard as follows:

> Florida precedent distinguishes between two duties in the contractual indemnification context: (1) the duty to indemnify and hold harmless the indemnitee, and (2) the duty to defend the indemnitee. *See* [*State of Fla. Dep't of Transp. v. S. Bell Tel. & Tel. Co.*, 635 So. 2d 74, 78 (Fla. Dist. Ct. App. 1994)] (noting that the "duty to defend is entirely separate from [the] right to indemnification"); [*J. A. Jones Const. Co. v. Zack Co.*, 232 So. 2d 447, 450 (Fla. Dist. Ct. App. 1970)] (same). The duty to defend is triggered based on "the nature of the claim" alleged against the indemnitee, "regardless of whether the party asserting the claim should win or lose upon a final determination of the suit." *J. A. Jones*, 232 So. 2d at 450; see *also Southern Bell*, 635 So. 2d at 78. The indemnitor must defend the indemnitee if the underlying facts contained in the complaint can be fairly read to support a claim covered by the indemnification provision. *Metropolitan Dade County v. CBM Indus. of Minnesota, Inc.*, 776 So. 2d 937, 938 (Fla. Dist. Ct. App. 2001).

*Rountree*, 286 F.3d at 1261 (alteration to internal quotation in original).

In *Rountree*, however, the Eleventh Circuit held that "the plain language of the

indemnification provision in the [contract at issue] trumps the rules that would otherwise apply in the duty-to-defend context." *Id.* at 1262. The relevant portion of the agreement in that case read as follows:

> [T]he Contractor [GE] *shall defend, indemnify, and hold harmless* the Owner [KUA] and its officers, directors, commissioners, agents and employees, and the Engineer [B&V] and its partners from and against all liability, claims, damages, losses and expenses, including reasonable attorney['s] fee[s], resulting from . . . injury to or death of persons (including employees of Owner, Engineer and Contractor) or physical damage to or physical loss of property of third parties *to the extent of and on account of any negligent act or omission of Contractor in performing the work under the Contract*. . . .

*Id.* at 1260 (quoting the contract; emphasis and alterations added in *Rountree*).

The Eleventh Circuit focused on the phrase "to the extent of and on account of," contrasting it with other cases that applied the default rule to contracts calling for defense and indemnity of claims "that *may* arise out of a negligent act or omission" of the indemnitor. *Id.* at 1262 (distinguishing *CBM Indus.*, 776 So. 23d at 938). The panel held that the language at issue was closer to a contract "which limited the indemnitor's payment of claims and expenses to situations where 'liability [was] imposed by law,'" which a Florida court held did not impose a duty to defend unless and until such liability was actually established. *Id.* (quoting *Westinghouse Elec. Corp. v. Prudential Ins. Co. of Am.*, 547 So. 2d 721, 721 (Fla. Dist. Ct. App. 1989)). The Eleventh Circuit therefore affirmed the district court's decision that GE had no duty to defend because GE was ultimately found as a matter of law not to be negligent. *Id.* at 1263.[7]

PRA argues that the contract here, which imposes a duty to defend "against any and all suits, judgments, or liabilities directly arising from the negligence or other improper conduct of such party," Contract § 5, is analogous to the "to the extent of and on account of" language in *Rountree*. Reply at 5. Essentially, PRA asks the Court to follow a thread from the "liability imposed by law" language in *Westinghouse*, through the "to the extent of and on account of"

---

[7] The district court erroneously applied Florida precedent addressing the duty to indemnify to a claim based on the duty to defend. *See Rountree*, 286 F.3d at 1263. The Eleventh Circuit held that the district court erred in its reasoning but affirmed the result for the reasons discussed above.

United States District Court
Northern District of California

language in *Rountree*, to the "directly arising from" language in the Contract here. With each step, however, these indemnity provisions stray farther from the Florida decision on which the Eleventh Circuit relied. In *Westinghouse*, the duty to defend was limited to "liability imposed by law," which—at least as the court in that case read it—explicitly invoked a judicial determination as a condition precedent to the duty. *See Westinghouse*, 547 So. 2d at 721−22. In *Rountree*, nothing in the contract specifically referenced a judicial determination, but the phrase "to the extent of" at least clearly limits the scope of the clause in some way. *See Rountree*, 286 F.3d at 1262. Here, the "directly arising from" language most obviously relates to the degree of *causation* required for indemnity, but does not obviously relate to the stage of proceedings at which the duty to defend would arise. *See* Contract § 5.

"A reasonable interpretation of a contract is preferred to an unreasonable one." *Danforth Orthopedic*, 750 So. 2d at 776. It is reasonable to expect that in entering a contract specifically establishing a duty "to defend," Contract § 5, the parties intended that duty to arise at a point when the indemnitor could actually defend—not to remain dormant until after a determination of fault, when it would be largely redundant to the separately stated duty to indemnify. The Court is not persuaded that, without an explicit statement of such intent, the parties intended to limit the duty to defend to the narrow circumstances identified in PRA's Reply, such as where the indemnitor admits fault or has been found negligent in a separate proceeding. *See* Reply at 12−13. Taking into account the well-established background principle that "[t]he duty to defend is triggered based on 'the nature of the claim' alleged against the indemnitee, 'regardless of whether the party asserting the claim should win or lose upon a final determination of the suit,'" and examining the language of the Contract, the Court holds that the parties here did not intend to upset the usual rule. *See Rountree*, 286 F.3d at 1261 (quoting *J.A. Jones*, 232 So. 2d at 450).[8]

---

[8] Because the contract language here differs from that which the Eleventh Circuit found significant in *Rountree*, the Court need not decide whether it would follow the result of that case if faced with the same language. The Court notes, however, that although federal courts generally defer to interpretations of state law by the regional circuit court whose jurisdiction encompasses the state at issue, PRA has cited no authority supporting its assertion that this Court is *bound* by such decisions. *See* Reply at 10−11; *cf. Dawn Equip. Co. v. Micro-Trak Sys., Inc.*, 186 F.3d 981, 989 n.3 (7th Cir. 1999) ("[W]e *normally* defer to a sister circuit's interpretation of the law of a state within its jurisdiction." (emphasis added)); *United States v. Maness*, 23 F.3d 1006, 1009 (6th

The Court is aware of no authority holding that the same principle applies to the duty to indemnify. Because there has been no finding that PRA acted improperly, Sephora has not plausibly alleged facts giving rise to PRA's duty indemnify. The harm alleged in this case, consisting solely of the cost of Sephora's successful defense, is better viewed through the lens of the duty to defend.

### F. The *Renn* Complaint Gives Rise to a Duty to Defend

Because the scope of a duty to defend is generally intertwined with the duty to indemnify, some discussion of the latter is helpful here as a foundation for the Court's analysis of the former. The Supreme Court of Florida has long held "that an indemnity agreement only indemnifies the indemnitee for his or her own negligence or negligent acts if the agreement contains a specific provision protecting the indemnitee from liability caused by his or her own negligence." *Stanislo*, 157 So. 3d at 264. That doctrine is generally traced to *University Plaza Shopping Center v. Stewart*, which limited its holding to cases "for liability resulting *solely* from the negligence of the indemnitee." *University Plaza*, 272 So. 2d 507, 512 (Fla. 1973). Not long after, however, the court "extend[ed] the holding in *University Plaza* to cases where the indemnitor and indemnitee are jointly liable," reasoning that "the public policy underlying that decision applies with equal force" in such circumstances because "courts of law rightfully frown upon the underwriting of wrongful conduct, whether it stands alone or is accompanied by other wrongful acts." *Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equip. Co.*, 374 So. 2d 487, 489–90 (Fla. 1979); *see also Cox Cable Corp. v. Gulf Power Co.*, 591 So. 2d 627, 629–30 (Fla. 1992)

---

Cir. 1994) (holding that the Sixth Circuit would be "obligated to disregard" a Fourth Circuit decision contrary to a decision by the Supreme Court of North Carolina); *Abex Corp. v. Md. Cas. Co.*, 790 F.3d 119, 125–26 (D.C. Cir. 1986) ("[W]e will defer to the local circuit's view of the law of a state in its jurisdiction . . . *unless we are convinced that the court has ignored clear signals emanating from the state courts*." (emphasis added)); *Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 283 (2d Cir. 1981) ("[W]e should defer to the views of the Sixth Circuit *unless* we can point to a clear basis in Tennessee law for predicting that the Tennessee courts, when confronted with a case such as this, would conclude that the Sixth Circuit's prediction was incorrect." (emphasis added)). As in all cases where this Court is called upon to interpret state law, the Court's role is either to follow the decisions of the state's highest court or to predict how that court would resolve the issue. *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002). A decision by the local federal circuit—here, a different circuit than that which would review an appeal of this Order—will usually be persuasive as to that inquiry but is not binding.

(reaffirming the holding of *Charles Poe*).

The indemnity clause of the Contract here does not explicitly encompass the indemnitee's sole or joint negligence. *See* Contract § 5. To the contrary, by limiting its scope to "suits, judgments, or liabilities directly arising from the negligence or other improper conduct of" the indemnitor, it strongly suggests that it would not include the indemnitee's negligence. *See id.* Based on the precedent above, if Sephora and PRA were jointly liable for misconduct, PRA would have no duty to indemnify Sephora under the Contract.

When it comes to the duty to defend, however, the analysis is slightly different. Along the lines of the cases discussed above, Florida courts will not "read an indemnity agreement to provide a duty to defend where the *only* claim raised against the party was a negligent claim for its own active negligence." *CBM Indus.*, 776 So. 2d at 939 (citing *SEFC Bldg. Corp. v. McCloskey Window Cleaning Inc.*, 645 So. 2d 1116 (Fla. Dist. Ct. App. 1994)) (emphasis omitted in part). Based on the considerations identified by the state supreme court in *Charles Poe* in the context of the duty to indemnify, that principle likely extends to cases that are entirely based on a theory of joint liability. *See Charles Poe*, 374 So. 2d at 489–90. However, "'when a complaint contains a covered claim, and a claim which is not covered by the indemnity agreement, then the duty to defend extends to the entire lawsuit.'" *CBM Indus.*, 776 So. 2d at 939 (quoting *Westinghouse Elec. Corp. v. Metro. Dade County*, 592 So. 2d 1134 (Fla. Dist. Ct. App. 1992)). Accordingly, where an underlying complaint supports both a theory of vicarious liability and a theory of the indemnitee's own or joint fault, the duty to defend applies to the case as a whole. *Id.* at 938–39; *see also Rountree*, 286 F.3d at 1261 ("The indemnitor must defend the indemnitee if the underlying facts contained in the complaint can be fairly read to support a claim covered by the indemnification provision." (citing *CBM Indus.*, 776 So. 2d at 938)); *S. Bell*, 635 So. 2d at 78 ("[E]ven if DOT was later determined to be solely liable to Misener on its claim for damages, and had no right to indemnification from Bell, Bell's duty to defend is entirely separate from DOT's right to indemnification, because its duty to defend must be determined from the allegations in Misener's complaint against DOT at the time it was filed.").

The question, then, is whether Renn's complaint against Sephora can be fairly read to

support a claim based on vicarious liability for PRA's conduct. The Court has little trouble concluding that it can.

Despite Sephora's assertions to the contrary, the *Renn* complaint does include allegations of active fault by Sephora. Perhaps most significantly, it accuses Sephora of "unilaterally determin[ing]" the amounts that it demanded from purported shoplifters, a determination that would be integral to Renn's theory that the demand letters improperly sought greater penalties than those authorized by California law. *See* DRJN Ex. 2 ¶¶ 25, 82–83. Other portions of the Complaint, such as the allegation that Sephora's knowingly participated in an unlawful scheme, the claim that Sephora should be enjoined from "unlawful searches, seizures, and invasions of privacy" in its stores, and the prayer for punitive damages, also tend to suggest that Renn sought to hold Sephora liable for its own conduct rather than merely vicariously liable for the acts of PRA. *See id.* ¶¶ 4, 90 & Prayer for Relief ¶ 8.

On the other hand, many if not most of Renn's allegations refer to action by PRA, or actions by "Sephora, through its agent [PRA]." *See, e.g., id.* ¶ 24 (discussing the first demand letter sent to Renn). Florida courts have construed similar language in a complaint as alleging vicarious liability. *See CBM Indus.*, 776 So. 2d at 939 (holding that a complaint alleging "that the [indemnitee] County 'by and through *its agents* and employees'" acted negligently in effect "claims that the County is liable for its own negligence and vicariously liable for the negligence of its 'agents,'" and accordingly finding that a duty to defend attached to one such agent whose responsibilities included aspects of the conduct at issue).

Even if the *Renn* court had held Renn to her allegation (on information and belief) that Sephora unilaterally determined the amounts demanded from purported shoplifters, there is no allegation that Sephora itself directed PRA to include other aspects of the letters to which Renn objected, including but not limited to the assertion that Renn could be liable for attorneys' fees, the failure to disclose Renn's right to dispute the basis of the claim, and the alleged fact that the letters were not drafted, reviewed, or in one case signed by attorneys licensed to practice law in California. *See id.* ¶¶ 26, 41. Supposing that Renn had prevailed on her claims that such conduct was actionable under California law, *see, e.g., id.* ¶¶ 62, 69–70, 84, her complaint was broad

enough to support a theory of vicarious liability for PRA's conduct. Accordingly, although the *Renn* complaint is not formally divided into separate claims for direct and vicarious liability, the Court finds that it gives rise to a duty to defend under the Florida courts' precedent discussed above.

**G. Sephora's Demand Letter Did Not Extinguish PRA's Duty to Defend**

PRA argues that Sephora essentially waived any right to invoke PRA's duty to defend by stating in its demand letter that it "retained the right to control the defense of this matter" and demanding that PRA "bear the cost to defend" rather than demanding that PRA "defend." *See* Mot. at 15; DRJN Ex. 10. PRA is correct that Florida law generally entrusts control of the defense to the indemnitor. *Doe ex rel. Doe v. Allstate Ins. Co.*, 653 So. 2d 371, 374 (Fla. 1995) (holding that when an insurer has a duty to defend, "[t]he insured has the reciprocal obligation to allow the insurer to control the defense and to cooperate with the insurer"). Sephora does not meaningfully dispute this point; its argument that the Contract is silent on the matter and "does not in any way limit Sephora's right to control its own defense" is no reason to depart from established law that entrusts such control to the indemnitor. *See* Opp'n at 7. The relevant question, however, is whether Sephora's assertion of control in the initial demand letter excuses PRA's duty as a matter of law. The Court is unable to determine at the pleading stage that the demand letter had such an effect.

Under Florida law, the "duty to defend . . . against a legal action arises when [a] complaint alleges facts that fairly and potentially bring the suit within" the scope of the duty to indemnify. *Jones v. Florida Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442–43 (Fla. 2005). The duty can therefore arise even where the indemnitor never requests a defense. *Mid-Continent Cas. Co. v. Basdeo* ("*Basdeo I*"), 742 F. Supp. 2d 1293, 1325 (S.D. Fla. 2010) (citing *Jones*, 908 So. 2d 438–53), *aff'd*, 477 F. App'x 702 (11th Cir. 2012) (per curiam) ("*Basdeo II*"). Because neither Florida law nor any explicit provision of the Contract requires a formal tender of defense, and because there is no dispute that Sephora's demand letter provided prompt notice of the claim to PRA, Sephora's assertion that it would retain control is therefore best analyzed in the context of Sephora's duty to cooperate with the defense.

Although the indemnitee has a duty to cooperate, failure to do so does not necessarily relieve the indemnitor of its duty to defend. The Supreme Court of Florida's 1976 decision in *Ramos v. Northwestern Mutual Insurance Company* sets forth the applicable standard:

> This Court in *American Fire and Casualty Co. v. Vliet*, [148 So. 2d 862 (Fla. 1941)], emphasized that to constitute the breach of a policy, the lack of cooperation must be material and the insurance company must show that it was substantially prejudiced in the particular case by failure to cooperate. Furthermore, as is stated in [*American Fire and Casualty Co. v. Collura*, 163 So. 2d 784 (Fla. 1964)], the insurer must show that it has exercised diligence and good faith in bringing about the cooperation of its insured and must show that it has complied in good faith with the terms of the policy.
>
> Not every failure to cooperate will release the insurance company. Only that failure which constitutes a material breach and substantially prejudices the rights of the insurer in defense of the cause will release the insurer of its obligation to pay. The question of whether the failure to cooperate is so substantially prejudicial as to release the insurance company of its obligation is ordinarily a question of fact, but under some circumstances, particularly where the facts are admitted, it may well be a question of law. *Cf. Norwich Union Indemnity Co. v. Willis*, 124 Fla. 137, 168 So. 418 (1936), *American Fire and Casualty Co. v. Vliet*, supra and *American Fire and Casualty Co. v. Collura*, supra.

*Ramos*, 336 So. 2d 71, 75 (Fla. 1976); *see also Bontempo v. State Farm Mut. Auto. Ins. Co.*, 604 So. 2d 28, 29 (Fla. Dist. Ct. App. 1992) (per curiam); *Basdeo II*, 477 F. App'x at 707; *Phila. Indem. Ins. Co. v. Kohne*, 181 F. App'x 888, 891 (11th Cir. 2006) (per curiam).[9] The Court is not aware of authority discussing this standard outside of the context of insurance coverage, but sees no reason why the Florida courts would apply a different standard to non-insurance indemnitors who have taken on a contractual duty to defend.

PRA cites no authority for its argument that Sephora's initial assertion of control was material and prejudicial as a matter of law. *See* Reply at 4–6. Any effect of that assertion is likely a question of fact.[10] Moreover, it is not apparent from the Complaint or any judicially noticeable document that PRA exercised diligence, or took action in any way, to obtain Sephora's cooperation—perhaps, for example, by informing Sephora that PRA would only accept the

---

[9] Under the Eleventh Circuit's rules, unpublished decisions may be cited as persuasive authority. 11th Cir. R. 36-2.

[10] PRA's argument regarding the magnitude of fees billed by Bryan Cave in defending the *Renn* case strays far from the allegations of Sephora's Complaint. *See* Reply at 5 n.3.

defense if Sephora ceded control as required by law. PRA cites one case holding that party's inaction where it has a contractual duty to cooperate waives its right to expect performance from the other party. Reply at 5 (citing *Dade County v. O. K. Auto Parts of Miami*, 360 So 2d. 441, 445 (Fla. Dist. Ct. App. 1978)). That case did not concern a duty to defend, and thus does not undermine the indemnitor's duty of diligence in seeking cooperation in the present context. *See generally O. K. Auto Parts*, 360 So. 2d 441.

The Court is aware of no authority for the proposition that Sephora's apparent misunderstanding of, or overreach under, Florida law in initially asserting control of the defense—in a demand letter that explicitly asserts Sephora's rights under section 5 of the Contract—should serve to waive PRA's duty to defend as a matter of law. That assertion may well be significant on a full factual record, but it is not, in itself, a basis for dismissal at the pleading stage.

## IV. CONCLUSION

For the reasons stated above, PRA's Motion for Judgment on the Pleadings is DENIED. At the hearing, the Court referred the parties to mediation to occur within ninety days, with a case management conference to follow. PRA has indicated that it intends to file a motion to transfer venue. In order to promote settlement and discourage unnecessary litigation expense, PRA may wait to file that motion until after the case management conference. Any such delay will not be construed as a waiver of PRA's arguments related to venue.

**IT IS SO ORDERED.**

Dated: May 13, 2016

JOSEPH C. SPERO
Chief Magistrate Judge