UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEPHORA USA, INC.,<br><br>        Plaintiff,<br><br>   v.<br><br>PALMER, REIFLER & ASSOCIATES, P.A.,<br><br>        Defendant. | Case No. 15-cv-05750-JCS<br><br>**ORDER REGARDING MOTION TO ENFORCE SETTLEMENT AGREEMENT**<br><br>Re: Dkt. No. 83 |

## I.  INTRODUCTION

Plaintiff Sephora USA, Inc. ("Sephora") moves to enforce a settlement agreement against Defendant Palmer Recovery Attorneys, LLC ("PRA," sued as "Palmer, Reifler & Associates, P.A.").  The Court held a hearing on January 25, 2019.  For the reasons discussed below, Sephora's motion is GRANTED as to PRA's delinquent payment of $4,444.44, but DENIED as to Sephora's request to enter a consent judgment including liquidated damages pursuant to the default provision of the parties' settlement agreement.[1]  PRA is ORDERED to produce documents no later than February 1, 2019 establishing when PRA initiated the electronic transfer of funds due December 9, 2018, and the parties are instructed to meet and confer regarding methods to ensure compliance going forward.

## II.  BACKGROUND

### A.  Procedural History and Settlement Agreement

Sephora initiated this action against PRA after successfully defending a claim brought by the mother of a girl accused of shoplifting who received demand letters from PRA on behalf of Sephora.  As detailed in this Court's previous order denying PRA's motion for judgment on the

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

pleadings, Sephora claimed that PRA breached its contractual duty to defend and indemnity Sephora. *See generally* Order Denying J. on Pleadings (dkt. 44).[2] The parties reached a settlement and stipulated to dismiss this action, with the Court retaining jurisdiction "solely for purposes of enforcing the Settlement Agreement, including entering the provisionally confidential consent judgment [attached thereto] in the event [PRA] shall fail to comply with the Settlement Agreement." Stip. Order of Dismissal (dkt. 78). The Court signed the parties' stipulated order of dismissal on June 23, 2017. *Id.*

The settlement agreement requires PRA to pay Sephora "$160,000.00 in 36 equal [monthly] payments of $4,444.44, except as provided in Paragraph 6 below." Rockey Decl. (dkt. 83-2) Ex. A ("Settlement Agreement") ¶ 2. "The parties agree that [PRA] shall make funds available to [Sephora] through the ACH system of payments." *Id.* ¶ 3. Paragraph 6 reads as follows:

> **6. <u>Default.</u>** If [PRA] fails to make any monthly payment to [Sephora] timely and fails to cure as described herein, [PRA] will owe [Sephora] $175,000.00, consisting of the $160,000 [PRA] agreed to pay plus an additional amount of $15,000 which the parties agree is a reasonable estimate of the additional costs to be incurred by [Sephora] to enforce the judgment to be filed and entered pursuant to this paragraph in the event of default by [PRA]. . . . [PRA] shall be permitted to subtract from the amount of $175,000 the total of payments [PRA] has previously made to [Sephora]. The $175,000 minus the total of any payments made as of the date of default is the Default Amount.
>
> [PRA] shall owe the Default Amount if and only if [PRA] fails to cure the monthly payment deficiency or omission by making full payment within eight (8) calendar days of receiving a written notice from [Sephora] saying in substance that [PRA] has failed to make the required payment in part or in full ("Notice").
>
> The parties agree that in the event [PRA] shall default and fail to cure that default, the Default Amount shall become immediately due and owing. Any such written Notice required to [PRA] under this paragraph must be sent by [Sephora] by Overnight Delivery to defense counsel . . . .

*Id.* ¶ 6 (line breaks added). "In the event [PRA] shall default and it shall become necessary for [Sephora] to take steps to enforce the stipulated judgment," Sephora is also entitled to its actual

---

[2] *Sephora USA, Inc. v. Palmer, Reifler & Assocs., P.A.*, No. 15-cv-05750-JCS, 2016 WL 2770534 (N.D. Cal. May 13, 2016).

1   attorneys' fees and costs for enforcing the judgment to the extent that they exceed the $15,000

2   liquidated damages. *Id.* ¶ 24. The settlement agreement is governed by California law. *Id.* ¶ 23.

3       **B.      Post-Settlement Conduct**

4       PRA made a timely first payment on July 10, 2017. Rockey Decl. ¶ 3. The parties agreed

5   in early August that each payment would be made on the ninth of each month, or the next business

6   day if the ninth was not a business day, and stipulated at the hearing on the present motion that

7   this subsequent agreement constitutes a binding term of the settlement agreement. Rockey Decl.

8   ¶ 3 & Ex. B. PRA nevertheless failed to provide a timely payment for that month, but paid on

9   August 15, 2017 after Sephora's counsel sent an email on August 11, 2017. *Id.* ¶ 4; Jensen Decl.

10  (dkt. 83-1) ¶ 2. PRA also failed to make a timely payment for September of 2017, ultimately

11  paying for that month on September 25, 2017 after Sephora notified PRA of the missed payment.

12  Rockey Decl. ¶ 5; Jensen Decl. ¶ 2. After PRA missed the deadline for its October payment,

13  counsel for Sephora sent notice of default via overnight mail pursuant to Paragraph 6 of the

14  settlement agreement, and PRA provided that months' payment on October 18, 2017. Rockey

15  Decl. ¶ 6 & Ex. C; Jensen Decl. ¶ 2. PRA made the next two payments on time, but missed the

16  deadline for its January 2018 payment, and counsel for Sephora sent another notice of default via

17  overnight mail on January 22, 2018. Rockey Decl. ¶ 7 & Ex. D; Jensen Decl. ¶ 2.

18      PRA did not make any subsequent payments on time. Rockey Decl. ¶¶ 8–12; Jensen Decl.

19  ¶¶ 2–4. Sephora's counsel sent additional overnight letters on February 16, March 15, May 29,

20  June 15, and September 5, 2018, and PRA paid the amount due after receiving each of those

21  letters. Rockey Decl. ¶¶ 8–12; Jensen Decl. ¶¶ 2–3. Sephora's letter in June asserted that PRA

22  had breached the settlement agreement and the duty of good faith and fair dealing and warned that

23  Sephora would take action if PRA continued to miss payments. Rockey Decl. ¶ 11 & Ex. H.

24  PRA's final payment, for delinquent funds due in July and August of 2018, was received by

25  Sephora more than eight days after PRA received a delinquency letter: Sephora's counsel sent the

26  letter September 5, 2018; PRA received it September 6, 2018; the eight-day deadline fell on

27  September 14, 2018; and although PRA initiated the transfer of funds that day, Sephora did not

28  receive payment until the following business day, September 17, 2018. *See* Rockey Decl. ¶ 12 &

Ex. I; Jensen Decl. ¶ 3 & Ex. A;[3] Lagos Decl. (dkt. 84-1) ¶ 5 & Ex. 1.

PRA had made no further payments as of the date of Sephora's motion. Rockey Decl. ¶ 13; Jensen Decl. ¶ 4. At that time, PRA had paid a total of $62,222.16 of the $160,000 that it owes, with $97,777.84 remaining to be paid, including five monthly payments totaling $22,222.20 past due. *See* Jensen Decl. ¶ 5.

PRA's employee Thomas Stefanos states that PRA has experienced financial hardship in recent years due to a contraction of the retail sector that makes up much of its clientele, causing PRA to downsize its workforce and office space. Stefanos Decl. (dkt. 84-2) ¶¶ 5, 7. Stefanos states that PRA has not "held on to funds or withheld payment to frustrate Sephora," but rather "sought only to conserve all of its resources and meet its obligations as best it can." *Id.* ¶ 8.

Sephora's counsel states that on or about November 12, 2018, PRA's counsel took the position that PRA had no obligation to make payments unless and until it received notices under Paragraph 6. Rockey Decl. ¶ 12. PRA's counsel disputes that characterization, stating in his own declaration that he told Sephora's counsel only that Sephora could not seek default unless PRA failed to make a payment within the eight-day grace period after receiving notice under Paragraph 6. Dahlberg Decl. (dkt. 84-3) ¶¶ 8–9. A November 9, 2018 email from PRA's counsel to Sephora's counsel asserts that Sephora provided "no documentary proof of any late payment as that term is defined by the Agreement, or at all," and that PRA's initiation of a transfer of funds within the grace period satisfied the "only" requirement of the settlement agreement. *Id.* Ex. 2.

At the hearing on January 25, 2019, the parties agreed that since Sephora filed its motion, PRA has paid the amounts owed for September through December of 2018. The parties dispute

---

[3] PRA argues that Sephora treasurer Jensen's statement of when Sephora received this payment and an attached bank record confirming the same date are both inadmissible hearsay. That objection is overruled. Jensen is qualified to testify regarding Sephora's receipt of funds and to explain Sephora's business records regarding financial transactions. Moreover, as PRA's own accountant Blanca Lagos states that ACH transfers "can take at least one business day to process before the recipient receives funds," there is no real dispute that Sephora received the funds on the next business day after PRA initiated the transfer. Lagos Decl. ¶ 6. PRA also asserts that the Court should "disregard anything Mr. Jensen says" because he submitted an earlier declaration stating that Sephora received funds on September 19, 2018—an issue that Sephora does not address in its reply. Opp'n at 16 (citing dkt. 79-1). Given that the September 17 date in Jensen's current declaration is supported by the attached bank record and by PRA accountant Lagos's declaration regarding typical delay in ACH transactions, the Court declines to disregard it.

whether PRA provided the December payment within eight days of receiving formal notice from Sephora.  PRA has not yet paid the amount due on January 9, 2019, and Sephora has not yet provided notice pursuant to Paragraph 6 regarding that missed payment.

## III.    ANALYSIS

### A.    Legal Standard

Federal "courts have ancillary jurisdiction to enforce a settlement agreement only 'if the parties' obligation to comply with the terms of the settlement agreement ha[s] been made part of the order of dismissal—either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order.'" *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 967 (9th Cir. 2014) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)) (alteration in original).  The parties' agreement here includes such a provision, and the Court therefore has jurisdiction to enforce the agreement.

So long as the settlement agreement falls within the district court's jurisdiction, "[i]t is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it."  *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987).  Such enforcement falls within the discretion of the district court.  *See, e.g.*, *In re J.T. Thorpe, Inc.*, 870 F.3d 1121, 1124 (9th Cir. 2017) (citing *Callie* for the rule that enforcement of a settlement agreement is reviewed for abuse of discretion).

"The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally."  *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989).  Under California law, a "settlement [agreement], like any agreement, imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."  *Elyaoudayan v. Hoffman*, 104 Cal. App. 4th 1421, 1431 (2003) (citation and internal quotation marks omitted).

### B.    PRA Breached and Continues to Breach the Settlement Agreement

The settlement agreement plainly requires PRA to provide monthly payments of $4,444.44 to Sephora.  Settlement Agreement ¶¶ 2, 5.  As modified by the parties' subsequent arrangement,

such payments are due on the ninth of each month. *See* Rockey Decl. Ex. B. Accordingly, all but three of PRA's payments have been untimely, and PRA has simply failed to make the payment due January 9, 2019. The Court need not address whether PRA's apparent policy of waiting to pay until Sephora sends notices of default under Paragraph 6 is a breach of the duty of good faith and fair dealing, because it is a breach of the explicit terms of the agreement.

The default provision of Paragraph 6 does not limit PRA's duty to pay, but instead describes the circumstances under which a particular remedy—assessment of liquidated damages and entry of the stipulated judgment—would become available to Sephora for PRA's breach. The Court addresses that question separately below. It is not necessary to consider Paragraph 6, however, to determine that PRA has breached its obligations under the settlement agreement.

PRA asserts that the "parties did not stipulate to, and the Court did not retain jurisdiction over a claim of default based upon payment PRA made within the Agreement's grace period." Opp'n at 2. That assertion is incorrect. The parties' stipulation was "subject to the Court's agreement to retain jurisdiction for purposes of enforcing the settlement," and the Court's order—as proposed by the parties—provides that the "Court shall retain jurisdiction over this matter solely for purposes of enforcing the Settlement Agreement, *including* entering the provisionally confidential consent judgment in the event Defendant shall fail to comply with the Settlement Agreement." *See* Stip. Order of Dismissal (emphasis added). "As a matter of ordinary meaning and as recognized in case law, 'the word "including" . . . is ordinarily a term of enlargement rather than limitation.'" *Dmuchowsky v. Sky Chefs, Inc.*, No. 17-cv-05521-JCS, 2018 WL 5886529, at *6 (N.D. Cal. Nov. 9, 2018) (quoting *Hassan v. Mercy Am. River Hosp.*, 31 Cal. 4th 709, 717 (2003)). The Court declines to read this phrase of the dismissal order beginning with the word "including" as limiting the scope of the Court's jurisdiction, and therefore retains jurisdiction more generally to "enforce[e] the Settlement Agreement." *See* Stip. Order of Dismissal.[4]

---

[4] In support of the conclusion that enforcement is not limited to the Paragraph 6 default provision, the Court notes that the parties' obligations under the settlement agreement extend beyond PRA's payments to Sephora. As one example, the agreement includes a clause prohibiting each party from "mak[ing] any criticism, disparagement, or negative remarks as to the other to any third party." Settlement Agreement ¶ 12. Pursuant to the Court's retention of jurisdiction to enforce the agreement, the Court would have authority to consider a claim that a party breached that non-

PRA also asserts that it has not intentionally withheld payments from Sephora, citing the declaration of Thomas Stefanos as evidence of PRA's precarious financial circumstances. Opp'n at 3–4. While PRA's financial circumstances may require it to make difficult decisions, Stefanos does not state that PRA was unable to pay Sephora, or that missed payments resulted from carelessness or mistake. To the contrary, Stefanos states that PRA has "sought only to conserve all of its resources and meet its obligations as best it can," suggesting that withholding payment for as long as possible without triggering the default provision of the settlement agreement has been an intentional, strategic decision to "conserve [PRA's] resources" and meet other obligations. Stefanos Decl. ¶ 8. It is not entirely clear that PRA's intent is relevant to the outcome of Sephora's motion, but in light of this declaration and the lack of evidence to the contrary, the Court concludes that PRA's failure to make timely payments has been intentional, albeit not for the purpose of causing harm to Sephora.

## C. Sephora Is Not Entitled to Entry of Stipulated Judgment

Having determined that PRA breached the agreement, the Court turns to the question of whether Sephora is entitled to the remedy it seeks, which is entry of a $175,000 consent judgment against PRA pursuant to Paragraph 6 of the settlement agreement. The agreement makes clear that this remedy is available "*only* in the event that [PRA] defaults and fails to cure as provided in this paragraph 6." Settlement Agreement ¶ 6. Sephora's briefs do not explain why it believes that remedy to be appropriate for breach of the duty of good faith and fair dealing or for any other breach of the settlement agreement. Based on the plain language of the agreement, it is not. Sephora is entitled to entry of the consent judgment only if it can show that PRA violated the Paragraph 6 default provision.

As discussed above, in order for PRA to avoid entry of the consent judgment, Paragraph 6 requires PRA to "mak[e] full payment within eight (8) calendar days of receiving a written notice from [Sephora]." *Id.* Sephora contends that PRA breached that provision because, after PRA received Sephora's notice of default on September 6, 2018, Sephora did not receive payment until

---

disparagement clause, even though such a claim would not implicate payment within the grace period permitted by Paragraph 6.

September 17, 2018, which was eleven calendar days later. *See* Mot. at 7; Jensen Decl. ¶ 3. PRA maintains that it complied with Paragraph 6 by initiating the transfer of funds on September 14, 2018, which was the eighth day after PRA received notice from Sephora. Opp'n at 9; Lagos Decl. ¶ 4.

Under California law, which governs the parties' agreement, "[i]f a creditor . . . at any time directs the debtor to perform his obligation in a particular manner, the obligation is extinguished by performance in that manner, even though the creditor does not receive the benefit of such performance." Cal. Civ. Code § 1476. Accordingly, "'[w]hen a creditor directs a debtor to mail payment, it is deemed that the payment is made when it is deposited in the mail.'" *Sleep EZ v. Mateo*, 13 Cal. App. 5th Supp. 1, 6 (Cal. Super. Ct. App. Div. 2017) (quoting *Nguyen v. Calhoun* 105 Cal. App. 4th 428, 439–40 (2003)). Sephora argues that section 1476 does not apply here because the requirement to pay via ACH was part of the parties' negotiated settlement agreement rather than a unilateral direction by Sephora. Case law does not support that distinction. The court held in *Mateo* that section 1476 applied where a rental agreement required the tenant to pay rent by mail. *Id.* at 9. By entering the settlement agreement that provided PRA no option for payment except ACH transfer, Sephora "directed" PRA to pay via ACH within the meaning of section 1476. Moreover, based on the parties' representations at the hearing, Sephora has continued to insist that PRA pay via ACH when PRA has proposed using other methods of payment. The case on which Sephora relies is inapposite, as the creditor there provided multiple options for the debtor to make payment, and thus did not "direct" the debtor to pay via mail and assume the risk that mail would be lost or delayed under section 1476. *Cf. Cornwall v. Bank of Am.*, 224 Cal. App. 3d 995, 999–1000 (1990).

Sephora argues that electronic payments, as opposed to payment by mail, are always considered paid only when received, citing the Truth in Lending Act ("TILA") and a Seventh Circuit case applying it. Reply at 3–4 (citing 15 U.S.C. § 1639f(a); 12 C.F.R. § 1026.36(c)(1)(i); *Fridman v. NYCB Mortg. Co., LLC*, 780 F.3d 773 (7th Cir. 2015)). This is not a consumer credit case governed by TILA, and Sephora's authorities have no bearing on section 1476 of the California Civil Code. Sephora also argues that the language of parties' contract does not permit

PRA's preferred interpretation because it provides that PRA "shall *make funds available* to [Sephora] through the ACH system of payments," which suggests that the relevant consideration is when funds actually become available to Sephora. *See* Settlement Agreement ¶ 3 (emphasis added); Reply at 4–5. The relevant provision of Paragraph 6 governing default, however, states only that PRA must "mak[e] full payment within eight (8) calendar days of receiving notice." Settlement Agreement ¶ 6. Viewing that language in conjunction with section 1476, PRA complied with its duties to prevent default under Paragraph 6 by initiating payment within eight days, even if it breached other requirements of the settlement agreement by failing to ensure that funds were available to Sephora by the initial deadline monthly payments.

Because PRA complied with the requirements to cure default each time Sephora provided notice pursuant to Paragraph 6—at least for the payments addressed in the current record— Sephora is not entitled to entry of the consent judgment or to liquidated damages. This determination is without prejudice to Sephora bringing a new motion if it determines that PRA failed to comply with Paragraph 6 with respect to the December 2018 payment or any future payment.

## IV. CONCLUSION

PRA breached its duty to provide monthly payments pursuant to the settlement agreement. Sephora's motion is GRANTED with respect to enforcing that duty, and PRA is ORDERED to pay Sephora $4,444.44 for the payment still owing for January 2019 by initiating an ACH transfer no later than February 1, 2019. Because PRA complied with its obligations to avoid the default provision of Paragraph 6 with respect to the payments addressed in the current record, Sephora's motion is DENIED as to the request to enter the $175,000 consent judgment available only under that paragraph of the agreement.

No later than February 1, 2019, PRA is ORDERED to produce records establishing when it initiated the ACH transfer for the payment due December 9, 2018.

**IT IS SO ORDERED.**

Dated: January 25, 2019

_____
JOSEPH C. SPERO
Chief Magistrate Judge

9